CONTINENTAL MARITIME OF SAN FRANCISCO, INC.,
Plaintiff-Appellant,

v.

PACIFIC COAST METAL TRADES DISTRICT COUNCIL, METAL TRADES DEPARTMENT, AFL–CIO; International Brotherhood of Boilermakers, Iron Shipbuilders, Blacksmiths, Forgers and Helpers; United Brotherhood of Carpenters and Joiners of America; International Brotherhood of Electrical Workers; Laborers' International Union of North America; International Association of Machinists and Aerospace Workers; International Union of Operating Engineers; International Brotherhood of Painters and Allied Trades; Sheet Metal Workers International Association; International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America Airline Division; United Association of Journeymen and Apprentices and the Plumbing and Pipefitting Industry of the United States and Canada; Northwest Marine Iron Works, Inc.; Dillingham Corp., Defendants-Appellees.

No. 86–1702.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Dec. 8, 1986.

Decided May 21, 1987.

**1392**

Thomas R. Fahrner and Joseph Bell, San Francisco, Cal., for plaintiff-appellant.

David A. Rosenfeld, M. Laurence Popofsky and Eric R. Havian, San Francisco, Cal.; Thomas L. Colaluca, Cleveland, Ohio, for defendants-appellees.

Before NORRIS, BEEZER and BRUNETTI, Circuit Judges.

BEEZER, Circuit Judge:

Appellant Continental Maritime of San Francisco, Inc. ("Continental") appeals the district court's grant of summary judgment in favor of the appellees, Pacific Coast Metal Trades District Council, et al. ("defendants"). We have jurisdiction pursuant to 28 U.S.C. § 1291, and we affirm.

## I

## BACKGROUND

Continental operates a ship repair facility in San Francisco and competes with two Portland shipyards named as defendants in this action, Northwest Marine Iron Works and Dillingham Corporation. All three firms hire workers from various unions (also named as defendants) according to the terms of the "Pacific Coast Master Agreement" made between the unions and an association of shipyard owners.

In 1985, the defendant unions entered into special "project agreements" with Northwest Marine and Dillingham, by which they agreed to lower wages on certain listed repair projects. No similar project agreements were made with Continental.

In August 1985, Continental brought an action in federal district court alleging a conspiracy among the defendants in violation of the federal antitrust laws, intentional interference with contractual relations, and fraud. The shipyard defendants filed answers to the complaint and then all the defendants moved for summary judgment. Despite Continental's opposition and requests for more time to conduct discovery, summary judgment was entered on January 29, 1986. Continental timely appealed.[1]

Two questions are raised on appeal. First, did Continental make a sufficient showing on the merits to survive summary judgment? Second, should Continental have been allowed more time to conduct discovery? An affirmative answer to either question would necessitate reversal. We review the first question *de novo.* *Darring v. Kincheloe,* 783 F.2d 874, 876

---

1. The fraud claim was not appealed.

(9th Cir.1986). We review the second for an abuse of discretion. *United States ex rel. Army Athletic Ass'n v. Reliance Ins. Co.*, 799 F.2d 1382, 1387 (9th Cir.1986).

## II

## THE GRANT OF SUMMARY JUDGMENT

A. The Project Agreements Did Not Subject the Defendants to Antitrust Liability.

██ The Clayton Act and the Norris-LaGuardia Act explicitly exempt traditional union activity from antitrust scrutiny. 15 U.S.C. § 17; 29 U.S.C. §§ 52, 101–10, 113–15. Though there is no statutory exemption for concerted actions or agreements between unions and employers, the courts have fashioned a limited nonstatutory exemption, based on the recognition that national labor policy should sometimes override antitrust policy. *Connell Construction Co. v. Plumbers & Steamfitters Local Union No. 100*, 421 U.S. 616, 622, 95 S.Ct. 1830, 1835, 44 L.Ed.2d 418 (1975).[2] For example, an arm's length agreement between meat cutters and their employers to restrict store hours, while it inhibits competition based on hours, does not give a dissatisfied employer a cause of action under the antitrust laws, because in that case the national labor policy protecting union agreements concerning wages, hours and working conditions overrides antitrust policy. *Local Union No. 189, Amalgamated Meat Cutters v. Jewel Tea Co.*, 381 U.S. 676, 689–90, 85 S.Ct. 1596, 1601–02, 14 L.Ed.2d 640 (1965).

Neither this circuit nor the Supreme Court has enunciated a general rule by which the multiple concerns underlying labor policy and antitrust policy can be accommodated, but the Eighth Circuit has done so in a well-reasoned opinion. *See Mackey v. N.F.L.*, 543 F.2d 606, 612 (8th Cir.1976), *cert. dismissed*, 434 U.S. 801, 98 S.Ct. 28, 54 L.Ed.2d 59 (1977). According to the *Mackey* court, the parties to an employment agreement that restrains trade are exempt from antitrust liability only if three conditions are met: (1) "the restraint on trade primarily affects only the parties;" (2) the agreement "concerns a mandatory subject of collective bargaining" such as wages, hours or conditions of employment; and (3) the agreement "is the product of bona fide arm's length bargaining." *Mackey*, 543 F.2d at 614, and cases cited.[3] *See also UMW v. Pennington*, 381 U.S. 657, 85 S.Ct. 1585, 14 L.Ed.2d 626 (1965) (labor-management agreement designed to drive competitors out of business is subject to the antitrust laws); *Connell, supra* (labor-management agreement regulating the employer's choice of subcontractors goes beyond mandatory subjects of collective bargaining and is subject to the antitrust laws).

In the present case, Continental alleged that the defendants conspired to grant wage concessions to some shipyards and not to others. The defendants conceded that an agreement to deny wage concessions to Continental would be subject to the antitrust laws, but they denied such an agreement. The issue presented on the motion for summary judgment was accordingly one of the defendants' motives and intent. Summary judgment is disfavored in such cases, *Poller v. Columbia Broadcasting System*, 368 U.S. 464, 473, 82 S.Ct. 486, 491, 7 L.Ed.2d 458 (1962), but it may be granted where "the non-moving party does not show any genuine issue of material fact and does not present an adequate record to support a finding in his favor." *Dimidowich v. Bell & Howell*, 803 F.2d

---

2. Courts have assumed that this doctrine exempts both parties to the agreement from antitrust liability, both unions and employers. See *Mackey v. N.F.L.*, 543 F.2d 606, 612 (8th Cir. 1976) and cases cited therein.

3. These factors are echoed, without reference to *Mackey*, in *California Dump Truck Owners Ass'n v. Associated General Contractors*, 562 F.2d 607 (9th Cir.1977), at 611 (bona fide arm's length bargaining), 613 (indirect rather than a primary effect on others), 614 (mandatory subjects of collective bargaining). *See also Richards v. Neilsen Freight Lines*, 810 F.2d 898, 905–06 (9th Cir.1987) (labor-management agreement is exempt from antitrust scrutiny unless it creates "substantial anticompetitive effects tangential or unrelated to the legitimate central purpose of organizing a company.").

1473, 1477 (9th Cir.1986), citing *Filco v. Amana Refrigerators, Inc.,* 709 F.2d 1257, 1260 (9th Cir.), *cert. dismissed,* 464 U.S. 956, 104 S.Ct. 385, 78 L.Ed.2d 331 (1983).

A recent Supreme Court case sheds light on the proper standard for summary judgment where motives and intent are at issue. In *Monsanto Co. v. Spray-Rite Service Corp.,* 465 U.S. 752, 764, 104 S.Ct. 1464, 1470, 79 L.Ed.2d 775 (1984), the Court said that a plaintiff alleging a conspiracy in restraint of trade can survive a directed verdict only if the evidence "tends to exclude" an innocent explanation. We have adopted a similar rule in the case of summary judgment:

> Once the allegations of conspiracy made in the complaint are rebutted by probative evidence supporting an alternative interpretation of a defendant's conduct, if the plaintiff then fails to come forward with specific factual support of its allegations of conspiracy, summary judgment for the defendant becomes proper.

*Barnes v. Arden Mayfair, Inc.,* 759 F.2d 676, 680 (9th Cir.1985) (quoting *ALW, Inc. v. United Air Lines, Inc.,* 510 F.2d 52, 55 (9th Cir.1975)); *see also Richards v. Nielsen Freight Lines,* 810 F.2d 898, 902 (9th Cir.1987). We turn to Continental's allegations and evidence in light of this standard.

The record indicates that Arthur Farr, an official of Northwest Marine, initially requested special wage concessions from the defendant unions as a way to alleviate the poor economic picture at Northwest. The unions responded by authorizing local port councils to negotiate agreements for certain repair projects. The port councils of Seattle and Portland negotiated such "project agreements." [4] The port council in San Francisco did not.

■ The defendants explained, and Continental conceded, that Portland firms faced problems that Bay Area firms did not, that unemployment among union members was higher in Portland than in San Francisco, and that Northwest Marine and Dillingham were concerned about competition from non-union firms. The Portland

port council obviously had a greater incentive to make wage concessions than the San Francisco port council did. We hold that the defendants' explanation effectively rebutted Continental's initial allegations of conspiracy. Following the rule described above, we now consider whether Continental presented "specific factual support" for its allegations sufficient to survive summary judgment. Such factual support must "tend to exclude" the innocent explanation.

■ Two examples of Continental's "specific factual support" will suffice to illustrate the rest. First, the project agreements between the unions and the shipyard defendants recite that "[i]t is hoped by our combined efforts that the employer will become more competitive...." Second, representatives of the shipyard defendants proposed wage concessions almost a year before the project agreements were negotiated, pointing out that "[g]ranting relief to us would in no way require similar concessions to other shipyards." These examples, and the record read as a whole in the light most favorable to Continental, indicate no more than that the goal of the parties was to bring more government ship repair work to Northwest Marine and Dillingham. While the parties may have hoped that all of this work would come at the expense of non-union firms, they must have expected that some of it could come from other union firms like Continental. There is no evidence, however, that the defendants were motivated by anything but the goal of helping the Portland firms. There is no evidence that they agreed to deny wage concessions to Continental.

In other words, Continental presented no evidence tending to exclude the defendants' account of the project agreements, according to which the agreements primarily affected only the defendants, concerned only mandatory subjects of collective bargaining (wages), and were the product of bona fide arm's length bargaining. The district court properly found that the project agree-

---

4. The Seattle agreement was not ratified by the local union employees.

ments did not subject the defendants to antitrust liability.[5]

### B. The Project Agreements Did Not Represent an Intentional Interference with Contractual Relationships.

■ Continental alleged that its collective bargaining agreement with the defendant unions contained an implied covenant that no special wage concessions would be given to another shipyard, and that the defendant shipyards intentionally induced the unions to breach that covenant by requesting concessions for themselves and discouraging concessions for others. Again, the crucial issue before the district court was one of the defendants' motives and intent. Again, Continental failed to produce evidence tending to exclude the defendants' innocent explanation. Summary judgment was appropriate.

### III

### DENIAL OF FURTHER DISCOVERY

Continental filed its complaint on August 2, 1985, and by the end of September had requested production of documents and answers to two sets of interrogatories. One by one, beginning in October 1985, the defendants moved for summary judgment, which was entered on January 29, 1986, four months after discovery began. In granting summary judgment, the district court denied Continental's request for an extension of time in which to conduct further discovery.

■ Fed.R.Civ.P. 56(f) allows, but does not require, a district court to grant a continuance when a party opposing summary judgment wishes to conduct further discovery. Ordinarily, summary judgment should not be granted when there are relevant facts remaining to be discovered, but the party seeking a continuance bears the burden to show what specific facts it hopes to discover that will raise an issue of material fact. *Hall v. State of Hawaii*, 791

F.2d 759, 761 (9th Cir.1986). The mere hope that further evidence may develop prior to trial is an insufficient basis for a continuance under Fed.R.Civ.P. 56(f). *Neely v. St. Paul Fire & Marine Ins. Co.*, 584 F.2d 341, 344 (9th Cir.1978).

■ Here, the crucial issue in both the antitrust and the tort claims was whether the defendants intended to injure Continental. Continental wished more time to depose certain representatives of the various defendants, but most of those potential witnesses had already filed affidavits saying that the defendants had no intent to injure Continental. The burden was on Continental to show what specific facts it hoped to discover that would support its allegations of illegal conspiracy. See *United States ex rel. Army Athletic Ass'n v. Reliance Ins. Co.*, 799 F.2d 1382, 1388 (9th Cir.1986). Since Continental's motion was not specific, but only expressed the hope that evidence to contradict the affidavits would transpire at deposition, the trial court did not abuse its discretion by refusing to allow more time for discovery.

**AFFIRMED.**

---

**5.** Because we find that the project agreements are exempt from antitrust scrutiny under the nonstatutory exemption, we need not consider the defendants' alternative contention, that the agreements were a *unilateral* act of the unions, and therefore protected by the statutory exemption.