**NOT FOR PUBLICATION**
UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

**FILED**

JUL 5 2019

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| SURF CITY STEEL, INC.; et al., | No.   17-55477 |
| Plaintiffs-Appellants, | D.C. No. 2:14-cv-05604-BRO-SS |
| and | |
| UNITED RIGGERS & ERECTORS, INC., | MEMORANDUM* |
| Plaintiff, | |
| v. | |
| INTERNATIONAL LONGSHORE AND WAREHOUSE UNION; et al., | |
| Defendants-Appellees. | |

| | |
|---|---|
| SURF CITY STEEL, INC.; et al., | No.   17-55535 |
| Plaintiffs-Appellees, | D.C. No. 2:14-cv-05604-BRO-SS |
| and | |
| UNITED RIGGERS & ERECTORS, INC., | |
| Plaintiff, | |
| v. | |

   *      This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

INTERNATIONAL LONGSHORE AND WAREHOUSE UNION; et al.,

Defendants-Appellants,

and

PACIFIC MARITIME ASSOCIATION,

Defendant.

---

SURF CITY STEEL, INC.; et al.,

Plaintiffs-Appellees,

and

UNITED RIGGERS & ERECTORS, INC.,

Plaintiff,

v.

PACIFIC MARITIME ASSOCIATION,

Defendant-Appellant,

and

INTERNATIONAL LONGSHORE AND WAREHOUSE UNION; et al.,

Defendants.

No.   17-55586

D.C. No.
2:14-cv-05604-BRO-SS

Appeal from the United States District Court
for the Central District of California
Beverly Reid O'Connell, District Judge, Presiding

17-55477

Before: WATFORD and OWENS, Circuit Judges, and ZIPPS,[**] District Judge.

This appeal pertains to work assignment provisions in Sections 1.7, 1.71, and 1.72 of the Pacific Coast Longshore and Clerk's Agreement ("the CBA"), entered into by Appellees Pacific Maritime Association ("PMA")[1] and the International Longshore and Warehouse Union ("ILWU").[2] Appellants—Surf City Steel, Inc. and Sarens, USA, Inc. (collectively "Contractors") and the International Association of Bridge, Structural, Ornamental and Reinforcing Iron Workers ("Iron Workers Union")[3]—brought suit alleging that the CBA violated antitrust and labor laws, because it prevented them from competing for and performing certain crane work at West Coast ports. Iron Workers Union also alleged ILWU's conduct breached the AFL-CIO Constitution.

---

[**] The Honorable Jennifer G. Zipps, United States District Judge for the District of Arizona, sitting by designation.

[1] PMA is a multi-employer association whose members are stevedore companies, marine terminal operators, carriers, and maintenance companies. PMA acts as the collective bargaining representative between its member companies and the ILWU.

[2] Appellees also include four local affiliated ILWU unions.

[3] Appellants also include five local affiliated Iron Workers Unions.

17-55477

The district court was presented with multiple challenges to Appellants' claims and eventually dismissed all claims.[4] Appellants appeal those dismissals. Appellees contend the dismissals should be upheld, and argue on cross-appeal that the district court erred by rejecting an additional basis for dismissing the antitrust claims. We have jurisdiction under 28 U.S.C. § 1291, and we affirm.[5]

1. The district court dismissed the Appellant Contractors' labor law claims, concluding that the Second Amended Complaint ("SAC") failed to allege sufficiently and plausibly that Appellee ILWU engaged in prohibited secondary activity. Specifically, the court concluded the Appellants failed to allege any facts from which the court could infer that the purpose of the arbitration proceedings was

---

[4] The district court dismissed the labor law and breach of contract claims pursuant to ILWU's motion to dismiss the second amended complaint. The court dismissed the antitrust claims in response to PMA's motion to dismiss the third amended complaint. ILWU successfully raised the nonstatutory labor exemption defense in its motions to dismiss both the complaint and first amended complaint. ILWU unsuccessfully raised the defense in its motion to dismiss the second amended complaint and in its two motions for summary judgment.

Our review of the district court's rulings is de novo. *See Hansen v. Dep't of Treasury*, 528 F.3d 597, 600 (9th Cir. 2007) (summary judgment); *Dougherty v. City of Covina*, 654 F.3d 892, 897 (9th Cir. 2011) (motion to dismiss). In reviewing a summary judgment ruling, we can affirm on any grounds supported by the record. *Weiser v. United States*, 959 F.2d 146, 147 (9th Cir. 1992).

[5] The district court set forth the underlying facts in its opinions. We do not restate them here.

to pressure the contractors not to allow non-ILWU signatories to work or bid on their projects. We agree with the district court's reasoning and affirm.

Appellant Contractors' labor law claims are predicated upon a violation of sections 8(b)(4)(ii)(A) & (B) of the NLRA, 29 U.S.C. § 158(b)(4)(ii)(A) & (B). Section 8(b)(4) prohibits only activities that have a secondary, as opposed to a primary purpose. *Nat'l Wordwork Mfrs. Ass'n v. NLRB*, 386 U.S. 612, 624–39 (1967) ("*Nat'l Woodwork*"); *A. Duie Pyle, Inc. v. NLRB*, 383 F.2d 772, 776 (3d Cir. 1967).[6] "If the object of the agreement is to benefit the employees of the bargaining unit represented by the union, it is 'primary' and in such event does not fall within the proscription of § 8(e), whereas if the object is the application of pressure on an outside employer in order to require him to accede to union objectives it is 'secondary' and within the prohibition of § 8(e)." *A. Duie Pyle, Inc.*, 383 F.2d at 776. The CBA governed labor relations between PMA and ILWU, and required PMA-member companies to assign their crane work to ILWU workers. The SAC did not contain any allegations of a direct dispute between ILWU and the Contractors at the time the CBA was negotiated. The Contractors concede that the CBA provisions at issue did not "expressly address the issue of subcontracting." "Contractual provisions designed to create primary pressure[,] pressure brought to

---

[6] Because only agreements with a secondary purpose are prohibited, we agree that Appellant Contractors were required to plead a secondary purpose to state a section 8(b)(4) claim.

bear directly upon the primary employer with whom the union has a quarrel[,] are not prohibited by section 8(e)." *NLRB v. Hotel & Rest. Emps. & Bartenders' Union Local 531*, 623 F.2d 61, 66 (9th Cir. 1980) (citing *Nat'l Woodwork*, 386 U.S. at 635 and *Griffith Co. v. NLRB*, 545 F.2d 1194, 1198 (9th Cir. 1976)).

Appellant Contractors argue that the factual allegations contained in paragraphs 39-40, 57, and 67-89 of the SAC support an inference that ILWU's purpose in pursuing arbitration was to pressure PMA members to stop working with non-ILWU contractors such as Appellant Contractors, rather than to enforce the agreement.[7] That the CBA, as interpreted through arbitration, resulted in PMA members no longer working with Appellant Contractors, however, is insufficient to support a claim that Appellees had a secondary, prohibited motive when drafting the CBA. *See Nat'l Woodwork*, 386 U.S. at 627 ("[H]owever severe the impact of primary activity on neutral employers, it was not thereby transformed into activity with a secondary objective."); *Landgrebe Motor Transport, Inc. v. Dist. 72, Int'l. Ass'n of Machinists & Aerospace Workers, AFL-CIO*, 763 F.2d 241, 246 (7th Cir. 1985) ("Primary activity is protected even though it may seriously affect neutral third parties." (citations omitted)). "Some disruption of the business relationships

---

[7] We recognize that in rare cases, a union can violate Section 303 through its conduct in an arbitration proceeding if it is motivated by an unlawful secondary purpose. *See Am. President Lines, Ltd. v. Int'l Longshore & Warehouse Union*, 721 F.3d 1147, 1155 (9th Cir. 2013).

between the primary and secondary employers 'is the necessary consequence of the purest form of primary activity.'" *Landgrebe*, 763 F.2d at 246 (quoting *NLRB v. Local 825, Int'l Union of Operating Eng'rs, AFL-CIO*, 400 U.S. 297, 304 (1967)). The district court therefore did not err in concluding that the Contractors failed to plausibly allege that ILWU's efforts to enforce the CBA were motivated by secondary objectives.[8] *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Where a complaint pleads facts that are 'merely consistent with' a defendant's liability it 'stops short of the line between possibility and plausibility of entitlement to relief.'") (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 557 (2007)).

We further conclude that the district court properly dismissed the labor law claim with prejudice. Appellant Contractors argue that they should have been given another opportunity to amend their complaint; however, they fail to present any facts which could cure the defect underlying the district court's dismissal. *See Int'l Longshore & Warehouse Union v. ICTSI Or., Inc.*, 863 F.3d 1178, 1187 n.5 (9th Cir. 2017), *cert. denied*, 138 S. Ct. 1262 (2018) ("*ICTSI*") (dismissal upheld where complaint cannot be saved by further amendment.).

---

[8] Because we do not decide this issue on the basis of work preservation, we do not address the Contractors' argument that work preservation is an affirmative defense not properly considered on a motion to dismiss.

17-55477

2. The district court dismissed Appellant Contractors' antitrust claims for failure to state a claim. We affirm, but on an alternative ground.

An agreement allegedly restraining trade is shielded from antitrust liability under the nonstatutory labor exemption if: "(1) the restraint primarily affects the parties to the agreement and no one else, (2) the agreement concerns wages, hours, or conditions of employment that are mandatory subjects of collective bargaining, and (3) the agreement is produced from bona fide, arm's-length collective bargaining." *Phoenix Elec. Co. v. Nat'l Elec. Contractors Ass'n.*, 81 F.3d 858, 862 (9th Cir. 1996) (citing *Mackey v. Nat'l Football League*, 543 F.2d 606, 614 (8th Cir. 1976)).[9] We recently affirmed application of the nonstatutory labor exemption to work-assignment provisions of this CBA. *See ICTSI*, 863 F.3d at 1194–96. We find no basis for departing from that determination here.

The CBA work-assignment restraints primarily affect the parties to the CBA. The CBA might restrict PMA from subcontracting with non-signatory non-ILWU workers, as the district court found, but the CBA does not purport to govern the conduct of a non-signatory. PMA is a signatory to the CBA. *See id.* at 1194 (citing *Phoenix Elec. Co.*, 81 F.3d at 862 (finding it relevant to the first prong of *Mackey*

---

[9] We reject the Contractors' suggestion that we apply a five-part test. The Contractors provide no support for deviating from our precedent applying the *Mackey* factors. *See, e.g., ICTSI*, 863 F.3d at 1190 (reaffirming application of the three-factor *Mackey* test).

that an agreement "does not attempt to impose its terms on any nonsignatory party")). The second factor is satisfied because the challenged provisions of the CBA concern work assignment, a mandatory subject of collective bargaining. *See id*. Finally, the CBA was the product of multiple counter proposals during negotiation and hence a bona fide arm's-length agreement as required by the third factor. The Contractors fail to identify a material issue of fact which would support a contrary conclusion.[10]

3. We conclude that the district court properly dismissed Iron Workers' claim that ILWU breached Section 3, Article XX of the AFL-CIO Constitution ("Article XX"), which requires affiliates to "respect the established work relationship of every other affiliate." Under Article XX, an "established work relationship" exists "as to any work of the kind that the members of an organization have customarily performed at *a particular plant or worksite . . . .*" The SAC's general reference to "port facilities on the West Coast," rather than to a particular plant or worksite, fails to sufficiently allege that work was performed at a particular plant or worksite in violation of Article XX. We also affirm dismissal of the contract claim for the additional reason that Article XX bars the relief sought by Iron Workers Union. *Cf.*

---

[10] Because the nonstatutory labor exemption bars the Appellant Contractors' antitrust claims, we do not consider the merits of those claims.

17-55477

*Starrag v. Maersk, Inc.*, 486 F.3d 607, 615 (9th Cir. 2007) (enforcing parties' contractual limitation on damages).[11]

Finally, we conclude that dismissal of the contract claim with prejudice was proper. Iron Workers Union received prior opportunities to amend, and failed to plead which particular plant or worksite was affected. *See Chodos v. W. Publ'g Co.*, 292 F.3d 992, 1003 (9th Cir. 2002) ("[W]hen a district court has already granted a plaintiff leave to amend, its discretion in deciding subsequent motions to amend is particularly broad." (citation and internal quotation marks omitted)). Moreover, Iron Workers Union could not have cured the pleading deficiency as to the damages bar. *See Cervantes v. Countrywide Home Loans, Inc.*, 656 F.3d 1034, 1041 (9th Cir. 2011) (dismissal without leave to amend is proper when amendment would be futile).

**AFFIRMED.**

---

[11] We reject the Iron Workers Union's argument that ILWU waived the damages bar defense. ILWU asserted the defense in its motion to dismiss the original complaint, which the district court rejected. Based on the district court's ruling, we do not fault ILWU for not re-asserting the defense when seeking dismissal of the same contract claim as repleaded in the SAC.

17-55477