**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

No. 91-7109
Conference Calendar

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

MICHAEL ANTHONY SHELL,

Defendant-Appellant.

Appeal from the United States District Court
For the Northern District of Texas

(September 2, 1992)

Before KING, HIGGINBOTHAM and WIENER, Circuit Judges.

WIENER, Circuit Judge:

Defendant-Appellant Michael Anthony Shell was sentenced within the guidelines following his conviction on pleas of guilty to one of two counts of making false written statements in the process of acquiring a firearm, in violation of 18 U.S.C. § 922(a)(6), and to one of two counts of unlawful receipt of firearms by a convicted

felon, in violation of 18 U.S.C. § 922(g)(1). He was, however, denied a reduction of six points in his offense level under U.S.S.G. § 2K2.1(b)(1), the guideline provision for sentence reduction "[i]f the defendant obtained or possessed the firearm ... solely for lawful sporting purposes or collection . . . ." Shell appeals the refusal of the district court to grant the six level reduction for sporting purposes. Finding no error, we affirm.

I

FACTS AND PROCEEDINGS

On separate occasions Shell purchased a .30 caliber rifle and a 9 mm. pistol from a licensed firearms dealer. On each occasion the dealer required Shell to complete a standard ATF form that included the question whether Shell had been convicted of a crime punishable by imprisonment for a term exceeding one year. As Shell had been convicted of the offense of burglary of a building and sentenced to three years' imprisonment, his negative response to that question was false. The investigating ATF agents went to Shell's home and, upon entering, observed the subject rifle and pistol in plain view. The instant charges ensued.

Pursuant to a plea agreement, Shell pleaded guilty to one count under § 922(a)(6) and one count under § 922(g)(1). He subsequently objected to the presentence investigation report (PSR), claiming that he acquired the guns for lawful, recreational purposes which entitled him to a "sporting purpose" reduction of six points in his offense level, as required under § 2K2.1(b)1. In support of his contention, Shell testified that he bought the guns

2

to use in target practice; that even though he lived in an apartment in town he had access to "a lot of land out in the country" where he could go for target practice. He bolstered his own statements with testimony of his mother that Shell had always lived in a rural area and owned guns for sporting purposes. Shell also adduced testimony from his brother that, in the past, both he and Shell had owned pistols for target practice and long guns for deer and bird hunting. Shell's brother also testified that their father had owned guns, and that while growing up they considered gun ownership and use to be normal.

The district court observed that when the ATF agents entered Shell's urban apartment they found both guns loaded; that his past criminal history indicated a possibility that the guns might not be used solely for a lawful sporting purpose as required by the guideline; that the nature of the particular 9mm. handgun made it unlikely that the pistol was acquired solely for a lawful sporting purposes; and that giving false information to acquire the guns is inconsistent with obtaining firearms solely for lawful sporting purposes. In consequence of those observations the court found Shell's evidence "not credible" and, based on the factual finding that Shell did not acquire the guns solely for lawful sporting purposes, denied a six-level reduction under the version of § 2K2.1(B)(1) that was in effect on the date of the offense.

II

ANALYSIS

For purposes of the guidelines, the sentencing court's

3

findings of fact are reviewed under the "clearly erroneous standard.[1] A felon "claiming a reduction in the offense level [under § 2K2.1(B)(2)] bears the burden of establishing entitlement" by a preponderance of the evidence.[2] Given Shell's burden of proof and the reasons articulated by the district court, its findings of fact are not clearly erroneous.

As distinguished from findings of fact, application of the facts to the guidelines is a question of law subject to de novo review.[3]

The guidelines provision in effect at the time here in question poses some doubt as to the availability of the six-level reduction for the "false statement" violation of § 922(a)(6). Moreover, some of the obiter dicta of our earlier opinions on the "sporting purposes or collection" provision make our jurisprudential rules on the subject less than lucid. Still, our de novo review shows the district court's application of the facts to the guidelines in this case to be free of error.

The version of the guidelines applicable to Shell is the one promulgated effective November 1, 1989. The applicable version of Section 2K2.1(b)(1) instructed sentencing courts that, if the defendant "obtained or possessed the firearm ... solely for lawful

---

[1] United States v. Mourning, 914 F.2d 699, 704 (5th Cir. 1990).

[2] United States. v. Keller, 947 F.2d 739, 741 (5th Cir. 1991) (citations omitted); United States v. Alfaro, 919 F.2d 962 (5th Cir. 1990).

[3] United States v. Otero, 868 F.2d 1412, 1414 (5th Cir. 1989).

4

sporting purposes or collection, decrease the offense level determined above to level 6." (emphasis added). Although 18 U.S.C. § 922(g) is one of the crimes of conviction listed in § 2K2.1, Unlawful Receipt, Possession, or Transportation of Firearms or Ammunition, and thus is one for which the offense level was "determined above," we observe that § 922(a)(6), proscribing the making of a false statement, is not among the crimes of conviction listed in § 2K2.1. Nevertheless, in the "Commentary" to § 2K2.1, the list of "Statutory Provisions" does include § 922(a)(6). We therefore conclude that then, as now, the reduction provided in § 2K2.1(b)(1) for obtaining or possessing firearms for lawful sporting purposes or collection was potentially available to persons who guilty of violating, inter alia, §§ 922(a)(6) as well as 922(g)(1).

We are constrained here to clarify any perceived murkiness in our jurisprudence on the six-level reduction provisions of guidelines § 2K2.1(b). Some confusion might result if dicta in United States v. Pope,[4] is read in pari materiae with dicta in United States v. Buss[5], both of which are firearms cases involving defendants who were convicted felons and thus incapable of lawfully obtaining or possessing firearms. The defendant in Pope was charged not only with being a convicted felon in possession of an otherwise lawful firearm, in violation of 18 U.S.C. § 922(g), but also with possession of a silencer, a device which, if unregistered

---

[4]     871 F.2d 506 (5th Cir. 1989)

[5]     928 F.2d 150 (5th Cir. 1991)

5

(as in Pope's case), is not susceptible of being lawfully obtained or possessed without violating 26 U.S.C. § 5861(d), even by a citizen who is not a convicted felon and therefore not laboring under the general proscription of felons possessing firearms.

Pope insisted that he was entitled to a decrease in offense level under the guidelines because he acquired the firearm and the unregistered silencer for purposes of adding them to his gun collection. In rejecting Pope's contention, this court held that "only a lawful collection of guns can be considered as a mitigating factor under [the applicable guideline section]"[6]; or, stated another way, that "as a matter of law only a gun collection that is not itself unlawful can be used to reduce an offense level under [the applicable guideline]."[7]

From the fact situation in Pope and those two quotations, it is clear that the gravamen of the holding is that, irrespective of the quality of the gun collecter (e.g., a felon vis-a-vis a legally competent, unconvicted citizen), the fact that the collection was itself unlawful by virtue of the inclusion of the unregistered silencer prevented Pope from obtaining the 6-level reduction. Implicit in the Pope holding is the converse conclusion that if the collection in question had not itself been an unlawful one, Pope might have been eligible for the 6-level reduction for obtaining or possessing the firearm in question as part of the gun collection, even though as a convicted felon he would still be ineligible to

---

[6]   871 F.2d at 508. (emphasis added)

[7]   Id. at 509.

6

acquire or possess a collection of guns and thus would still be guilty of the firearms offense of conviction.

That much is clear. But the possibility that a casual reading of the _Pope_ opinion might mislead or confuse arises from the language of the second sentence in part V. _Conclusion_: "We conclude, however, that as a matter of law Pope's accumulation of guns cannot be used to reduce his offense level under [the applicable guideline] <u>because it was illegal for him to possess any guns</u>."[8] If read out of context, that statement would seem to say that any time the collect<u>er</u> cannot legally possess firearms, he or she cannot receive the 6-level reduction. But that cannot be; if it were, that statement would swallow the reduction guideline itself.

As the guideline only applies to convicted felons who obtain or possess firearms and, by definition, convicted felons can never legally obtain or possess guns, there would be no class of persons eligible for the 6-level reduction under such a reading. When that concluding sentence is read in context of the pure holding of the case, as expressed in the two passages first quoted above, it becomes clear that the _Pope_ test for the § 2K2.1(b) reduction hinges on the lawfulness of the gun collection, not the eligibility of the collector to possess guns.

Subsequent to _Pope_, we examined in _Buss_[9] a virtually identical 4-level reduction under a parallel guideline provision, one also

---

8      _Id._ at 510 (emphasis added).

9      928 F.2d 150 (5th Cir. 1991).

implicating sporting purposes and gun collections.[10]  In Buss, the court considered a convicted felon's contention that the sentencing court erred in accepting the probation officer's recommendation to deny the 4-level reduction under the sporting purpose exception "because Buss could not lawfully possess firearms. . . ."  Citing Pope, the government argued that, as Buss was a convicted felon, he could not lawfully possess guns and therefore was ineligible for the 4-level reduction.  Consistent with the foregoing analysis of Pope, however, the Buss panel rejected the government's interpretation, holding that it "would render [ ] § 2K2.1(b)(2) a nullity, because the provision applies only to the receipt, possession, or transportation of firearms by `prohibited persons,' or persons who could not lawfully possess them. . . .  [T]he drafters of the provision contemplated the lawfulness of the intended use as a factor separate from the lawfulness of the possession itself."[11]   Had the Buss opinion stopped there, the potential for confusion with Pope would have never arisen.  But, albeit in dicta, the Pope opinion continued its efforts to distinguish Buss from Pope on grounds that Pope implicated "unregistered firearms."[12]  The Buss opinion first states clearly-- and correctly--that the guideline provision in question authorized the reduction in level not only for use in sport or recreation but also for use in a gun collection.  Perhaps unfortunately, however,

----

[10]    § 2K2.1(b)(2).

[11]    928 F.2d at 152.  (emphasis in original)

[12]    Id.

the Buss opinion conclude by stating that gun collecting is little more than "possession," implying that collecting is not a use separate and apart from possession, while hunting and other recreational shooting are uses distinct from possession.

In addition to being dictum, that distinction appears to conflict with the guideline provisions it purports to explain, §§ 2K2.1(b)(2) and (3). Both of those provisions direct that reductions be granted in sentence levels for those felons who, in contravention of the law, possess the firearms. Clearly, those level reductions are not based on the lawfulness of possession because there can be no lawful possession of a gun by a convicted felon. Rather, the reductions are grounded on the sentencing commission policy that some types of illegal possessions are relatively benign by virtue of the use for which such possession is intended--use that would be lawful if exercised by one not previously convicted of a felony.

Both of the subject guideline provisions recognize that possession of a firearm is a physical fact and is always illegal if the possessor is a felon; but that in addition to the physical fact of possession there is the subjective quality of the possession, determined by the use intended by the possessor. This is better understood by recognizing that the sentencing levels established in the guidelines presume that when the person physically possessing the firearm is a felon the purpose or intended use is nefarious whether it be for armed robbery, aggravated assault, facilitating a drug transaction,or the like. The guidelines nevertheless

recognize the possibility that even a felon's acquisition or possession of a firearm can be benign when the intended use of the gun is "solely" for one of two purposes that would be lawful were the possessor not a felon: either (1) sporting or recreational use, such as hunting, target practice or competition; or (2) gun collecting--like hunting or target practice, a specialized use of a gun legitimately acquired or possessed.

The point of this verbose analysis is to make clear that the reduction provisions of the guidelines for felons in possession do not turn on the axiomatic truism that a felon can never lawfully possess a firearm. The entire reduction provision would clearly be subsumed in such a proposition. Rather, the availability of the reduction turns on the purpose or use for which the firearm is acquired or possessed <u>and</u> the lawfulness of such use if it were to be exercised by a citizen not under any legal disability--<u>lawful</u> hunting, <u>lawful</u> target practice, or <u>lawful</u> gun collecting. The unavailability of the reduction in <u>Pope</u> stemmed not from the fact that felons cannot possess guns in a collection, but from the unlawful nature of the gun collection--one which included an unregistered silencer--because even a citizen free of all disabilities could not lawfully possess such a collection. The same would be true, for example, if the felon possessed a shotgun for the purpose of hunting wild turkey, but did so out of season, in an illegally baited area. As that would be an <u>unlawful</u> sporting possession by any citizen, the sporting purpose reduction would be unavailable to the convicted felon. Likewise, if a felon

10

possessing a target rifle were apprehended while shooting out street lights within the city limits, the reduction would not be available because his shooting would not be <u>lawful</u> target practice even if the shooter were not a convicted felon.

Under such an analysis, it becomes even clearer that Shell, as a convicted felon, was properly denied the 6-level reduction. Even though under certain circumstances his .30 caliber rifle and a 9mm. pistol could be possessed solely for lawful sporting purposes, the facts found by the district court reflect that such was not the case here. None but the most negligent of target shooters would keep legitimate sporting firearms loaded in the home. Moreover, it is not sufficient that one among several intended uses might be lawful recreation or collection; one of those must be the <u>sole</u> intended uses. The district court did not credit Shell's contention that he falsified the ATF form to purchase the guns and thereafter kept them loaded in his house, solely for lawful recreation purposes. Particularly in light of Shell's criminal history, we are loathe to label the findings of the sentencing court clearly erroneous.

AFFIRMED.