_____

No. 95-3543
_____

United States of America,          *
                                   *
          Plaintiff-Appellee,      *
                                   *  Appeal from the United States
     v.                            *  District Court for the
                                   *  Northern District of Iowa.
Rick Waggoner,                     *
                                   *
          Defendant-Appellant.     *

_____

Submitted: September 10, 1996

Filed: January 10, 1997
_____

Before BOWMAN, BRIGHT, and LOKEN, Circuit Judges.
_____

LOKEN, Circuit Judge.

Rick Waggoner went pheasant hunting in the fall of 1990, violating a special condition of his probation and the federal statute barring felons from possessing firearms, 18 U.S.C. § 922. When this and other probation violations came to light in 1992, the district court[1] revoked probation, and Waggoner served the remaining six months of his original sentence.

In 1995, Waggoner pleaded guilty to a § 922 violation for the conduct that led to his probation revocation. This appeal raises a sentencing issue -- whether Waggoner's base offense level for the § 922 violation should be reduced from twelve to six because he

_____

[1]The HONORABLE DAVID R. HANSEN, then United States District Judge for the Northern District of Iowa, now a United States Circuit Judge.

"possessed the firearm . . . solely for lawful sporting purposes," U.S.S.G. § 2K2.1(b)(1) (1989).  The district court[2] denied this reduction because hunting in violation of a condition of probation is not a lawful sporting use.  Waggoner appeals.  We affirm.

## I.

In June 1989, Waggoner pleaded guilty to one count of unlawful sale and barter of migratory birds, a felony, and to one count of unlawful possession of migratory birds, a misdemeanor.  See 16 U.S.C. §§ 703, 707(a) and (b).  Waggoner, then a federally licensed taxidermist, committed these offenses by unlawfully killing, mounting, and selling large numbers of protected migratory birds.  The district court sentenced him to one year in prison and three years of probation.  The judgment included a special condition that Waggoner "is not to participate in hunting activity while on probation."  In December 1989, the district court suspended the remainder of Waggoner's prison term based upon his commitment to speak to conservation and hunting groups about the need to protect game and to comply with game laws.  The court ordered Waggoner, during probation, "not to participate in hunting activity" and to perform one hundred hours of community service.

In March 1990, while speaking to a Ducks Unlimited gathering about the importance of obeying federal game laws, Waggoner illegally purchased two collector's shotguns by falsely filling out the federal Firearms Transaction Record forms.  That violated the condition of probation that he obey federal and state laws.  Waggoner also purchased Iowa hunting licenses in 1990 and 1991 and successfully hunted pheasant on at least one occasion in the fall of 1990, which violated the special condition of probation set forth in the district court's judgment and its December 1989 order.

---

[2]The HONORABLE MARK W. BENNETT, United States District Judge for the Northern District of Iowa.

After a hearing, the court revoked probation because Waggoner's "repeated violations of his probation are serious and fundamental."  The court sentenced Waggoner to six months in prison, extended his probation to five years, and imposed additional conditions of probation primarily directed at his continuing alcohol abuse.

**II.**

In June 1995, Waggoner pleaded guilty to the § 922 violation here at issue -- being a felon in possession of four collector's guns plus the shotgun used to hunt pheasants in 1990.[3]  The Guidelines in effect when Waggoner committed this violation authorized a reduction in determining the base offense level for a § 922 violation "[i]f the defendant obtained or possessed the firearm or ammunition solely for lawful sporting purposes or collection."   § 2K2.1(b)(1) (1989).   This guideline reflects "the sentencing commission policy that some types of illegal *possessions* are relatively benign by virtue of the *use* for which such possession is intended -- use that would be lawful if exercised by one not previously convicted of a felony." United States v. Shell, 972 F.2d 548, 552 (5th Cir. 1992) (emphasis in original).  The 1989 Commentary confirmed that the inquiry focuses on "intended lawful use, as determined by the surrounding circumstances."  § 2K2.1, comment. (n.2) (1989).[4]

---

[3]Waggoner violated both § 922(g) and § 922(n) because he purchased the first two collector's guns while the earlier indictment was pending.

[4]The current guideline has been renumbered § 2K2.1(b)(2). It provides for a reduction "[i]f the defendant . . . possessed all ammunition and firearms solely for lawful sporting purposes or collection, *and did not unlawfully discharge or otherwise unlawfully use such firearms or ammunition*."  (Emphasis added.) This change clarifies the inquiry by moving the former application note's reference to lawful use into the guideline itself.  But the focus on use is unchanged.  Therefore, the result in this case would be the same under the current guideline as well.

The issue before us is narrow.  The government concedes, correctly in our view, that Waggoner cannot be denied the reduction simply because a felon may not lawfully possess firearms for hunting or collection.  See United States v. Prator, 939 F.2d 844, 847 (9th Cir. 1991); United States v. Buss, 928 F.2d 150, 152 (5th Cir. 1991).  The government also concedes that the four collector's guns were possessed "solely for lawful . . . collection," thus warranting a § 2K2.1(b)(1) (1989) reduction.  But the government argues the reduction must be denied because Waggoner's use of the fifth firearm violated the no-hunting condition of his probation and therefore was not "solely for lawful sporting purposes."

Waggoner argues that he is entitled to the reduction because his hunting activity did not violate any state or federal statute or regulation -- he held a valid hunting license, hunted only in season, did not exceed applicable bag limits, and so forth.  Waggoner concedes, as he must, that he is not entitled to a § 2K2.1(b)(1) reduction if his intended sporting use was unlawful.  See Shell, 972 F.2d at 552 (reduction not available if defendant hunted wild turkey "out of season, in an illegally baited area").  Thus, the issue is whether the gun used to hunt pheasants was possessed "solely for lawful sporting purpose" given Waggoner's no-hunting condition of probation.  Waggoner has the burden of proof on this issue.  See United States v. Dinges, 917 F.2d 1133, 1135 (8th Cir. 1990).  However, the relevant facts are undisputed.  This is an issue of Guidelines interpretation we review *de novo*.  See United States v. Hensley, 36 F.3d 39, 41 (8th Cir. 1994).

The Sentencing Commission did not define "lawful use" in § 2K2.1(b)(1).  Therefore, we look to that phrase's ordinary meaning -- use that is "conformable to law" or "allowed or permitted by law."  United States v. Johnson, 968 F.2d 208, 212 (2d Cir.), cert. denied, 506 U.S. 964 (1992).  Viewed in that light, hunting in violation of two court orders does not appear to be lawful use.  "[M]odern judicial decrees . . . have the binding

effect of laws for those to whom they apply." <u>Young v. United States ex rel. Vuitton et Fils S.A.</u>, 481 U.S. 787, 822 (1987) (Scalia, J., concurring).

Waggoner nonetheless argues that he is entitled to the reduction because he obeyed all Iowa hunting laws and regulations and therefore committed no crime when pheasant hunting in 1990. Even if the word "lawful" in § 2K2.1(b)(1) means conformance with the *criminal* laws (an issue we need not decide), Waggoner's definition of crime is too narrow. He violated an express court order not to engage in "hunting activities," an order entered to protect the public from the resumption of his prior illegal activities. The district court had inherent power to punish for contempt of that order, a power "absolutely essential to the performance of [its] duties." <u>Gompers v. Bucks Stove & Range Co.</u>, 221 U.S. 418, 450 (1911).

The purpose of criminal contempt is to "punish the act of disobedience as a public wrong." <u>Michaelson v. United States ex rel. Chicago, S.P., Minn. & Omaha Ry.</u>, 266 U.S. 42, 65 (1924). Beginning with the Judiciary Act of 1789, Congress has both ratified and circumscribed the power to punish for contempt. <u>See</u> <u>Green v. United States</u>, 356 U.S. 165, 169-72 (1958); <u>Ex parte Robinson</u>, 86 U.S. (19 Wall.) 505, 510-11 (1873); <u>Anderson v. Dunn</u>, 19 U.S. (6 Wheat.) 204, 227-28 (1821). The current statute authorizing federal courts to punish for criminal contempt is part of the criminal code. <u>See</u> 18 U.S.C. § 401. As the Supreme Court has stated, "Criminal contempt is a crime in the ordinary sense; it is a violation of the law, a public wrong which is punishable by fine or imprisonment or both." <u>Bloom v. Illinois</u>, 391 U.S. 194, 201 (1968). Thus, while the punishment imposed on Waggoner for violating these particular court orders was probation revocation, his conduct is properly considered unlawful in the criminal sense of that term.

Waggoner also argues that he has been denied the reduction simply because as a felon he violated § 922 by hunting with a firearm. But Waggoner's special condition of probation was not only that he refrain from hunting with a firearm -- that would have been superfluous to the general condition that he obey all laws, including § 922. Rather, Waggoner was prohibited from all "hunting activity," which would include activities such as hunting with bow and arrow, or enlisting friends or customers to shoot migratory birds that he could then illegally mount and sell. Waggoner violated this special condition. He committed the violation by using a firearm that was in his possession for this *unlawful* sporting purpose. For that reason, a reason peculiar to Waggoner's § 922 offense, he was properly denied a § 2K2.1(b)(1) reduction.

The sentence of the district court is affirmed. Because the court's judgment provided that Waggoner would remain on bond pending appeal, the case is remanded for amendment of that judgment consistent with this opinion.

BRIGHT, Circuit Judge, dissenting.

I believe Rick Waggoner's hunting was consistent with the purpose of the § 2K2.1(b)(1) reduction. Accordingly, I dissent.

Waggoner pled guilty to being a felon in possession of a firearm. The district court determined that Waggoner's sentencing range was 10-16 months and sentenced him to five months incarceration and five months home confinement. Waggoner asserts that he was entitled to a reduction under the Sentencing Guidelines because he used the firearm for a "lawful sporting purpose." If the reduction applies, Waggoner falls within a 0-6 month sentencing range. I believe the reduction is appropriate.

## DISCUSSION

### I.

The 1989 version of U.S.S.G. § 2K2.1(b)(1) states, "[i]f the defendant obtained or possessed the firearm or ammunition solely for lawful sporting purposes or collection, decrease the offense level determined above to level **6**." Waggoner hunted with a license during hunting season and obeyed all gaming laws. Accordingly, the Government concedes that Waggoner used the gun solely for a sporting purpose (i.e. hunting) and only contests the **lawfulness** of that hunting. The district court reluctantly agreed that Waggoner hunted unlawfully because a probation condition instructed him not to hunt.[1] (Sentencing Tr. at 33.)

The majority opinion concludes that Waggoner's hunting was not "lawful" by making two arguments. First, the majority opinion

---

[1]The district court made repeated references to the injustice of the 10-16 month sentencing range:

> It pains me to rule against you. Personally I would want to rule in your favor. It's a close enough question I would like to rule in your favor to get into a sentencing range that I think is more just, . . . . (Sentencing Tr. at 33.)

> . . . .

> I -- I am the first one to recognize I could be wrong. I hope I'm wrong. I hope the Eighth Circuit sees it your way, . . . . (Id. at 34.)

> . . . .

> [The 10-16 month range] is too harsh, it's too long, it's too severe, . . . . If it were up to me, I would give you probation. I wouldn't hesitate. (Id. at 41.)

After sentencing Waggoner to the most lenient sentence available, the court observed that "[i]f I could do less than that, I would. But my hands -- my hands are bound." Id.

holds that, for purposes of § 2K2.1(b)(1), the term "lawful" must be given its "ordinary" meaning. Slip Op. at 4. Second, the majority opinion determines that Waggoner's hunting was unlawful because he could be held in criminal contempt of court for violating a probation condition that he not hunt. Id. at 5.

I respectfully disagree. First, the majority's definition of "lawful" finds no support in the case law, is implicitly rejected by every court analyzing the reduction, and contradicts a definition of "lawful" utilized in a case quoted approvingly by the majority. Second, the majority's contempt argument cannot be distinguished from recent Eighth Circuit law.

### A.

Whether the § 2K2.1(b)(1) reduction applies depends on whether Waggoner's hunting was "lawful." The majority opinion, searching for a definition of "lawful," observes that "lawful" is not defined within § 2K2.1(b)(1), slip op. at 4, then decides to define "lawful use" by "look[ing] to that phrase's ordinary meaning . . . ." Id. The majority opinion concludes that Waggoner's hunting was not within the ordinary meaning of "lawful" because he violated a condition of his probation. Id. at 5.

The majority opinion concedes, however, that "Waggoner cannot be denied the reduction simply because a felon may not lawfully possess firearms for hunting or collection." Id. at 4. By definition, then, the "ordinary" meaning of "lawful" cannot be used for § 2K2.1(b)(1) as it "would render . . . [the reduction] a nullity, because the provision applies only to the receipt, possession, or transportation of firearms by `prohibited persons,' or persons who could not lawfully possess them." United States v. Buss, 928 F.2d 150, 152 (5th Cir. 1991).

-8-

Felons are not the only individuals who receive the benefits of § 2K2.1(b)(1) despite their unlawful use. For example, fugitives from justice, illegal aliens, those dishonorably dismissed from the Armed Forces, and individuals who renounce their citizenship are all forbidden from possessing firearms, 18 U.S.C. § 922(g), and the application of an "ordinary" definition of "lawful" would preclude them from the reduction. Of course, the reduction does apply to these individuals, United States v. Prator, 939 F.2d 844, 846-47 (9th Cir. 1991), because the courts do not adopt the "ordinary" definition of "lawful" for § 2K2.1(b)(1).

In fact, the Sentencing Commission intended to sentence felons in possession who use guns in a manner not involving criminal activity or with the potential to harm other people less severely than other felons in possession. See, e.g., United States v. Lam, 20 F.3d 999, 1002 (9th Cir. 1994) ("[W]e do see a good deal of logic in the Commission's decision to limit the reduction to those who hold a weapon for lawful sporting or collection purposes. Neither of those purposes encompasses the killing or maiming of human beings, but personal protection surely does."); Buss, 928 F.2d at 152 ("[A] former felon who possesses a firearm for use in hunting does not raise the same concerns as one who possesses a firearm for use in future crimes."). This policy is also consistent with the commentary notes to § 2K2.1(b)(1). Prator, 939 F.2d at 846 ("The commentary to section 2K2.1(b)(1) fully supports our view that the Sentencing Commission intended to reduce the punishment if the illegally possessed firearm was not intended to be used for criminal activities.").

In my view, the Fifth Circuit correctly defines "lawful" as a sporting purpose or collection that would be lawful if performed by any citizen free of all legal disabilities. United States v. Shell, 972 F.2d 548, 552-53 (5th Cir. 1992). This definition is consistent with the language and purpose of the reduction.

The majority quotes <u>Shell</u> regarding the policy underlying the § 2K2.1(b)(1) reduction, slip op. at 3, but fails to mention a detailed discussion in the following paragraph of <u>Shell</u> which contradicts the argument that Waggoner's hunting was unlawful:

> [T]he reduction provisions . . . for felons in possession do not turn on the axiomatic truism that a felon can never lawfully possess a firearm. The entire reduction would clearly be subsumed in such a proposition. Rather, the availability of the reduction **turns on the purpose or use** for which the firearm is acquired or possessed **and the lawfulness of such use if it were to be exercised by a citizen not under <u>any</u> legal disability**--lawful hunting, lawful target practice, or lawful gun collecting.

<u>Id.</u> at 552 (emphasis added).

<u>Shell</u> then clarified an earlier decision, <u>United States v. Pope</u>, 871 F.2d 506 (5th Cir. 1989), which suggested that a felon could never lawfully possess a gun collection under § 2K2.1(b)(1). The majority opinion quotes <u>Shell</u> a second time without mentioning that the sentences immediately preceding and following the quoted phrase, when read in the context of the entire opinion, appear to contradict the holding of the majority. I quote the three sentences in their entirety, with the phrase quoted by the majority underlined:

> The unavailability of the reduction in <u>Pope</u> stemmed not from the fact that felons cannot possess guns in a collection, but from the unlawful nature of the gun collection--one which included an unregistered silencer--**because even a citizen free of all [legal] disabilities could not lawfully possess such a collection**. The same would be true, for example, if the felon possessed a shotgun for the purpose of hunting wild turkey, but did so <u>out of season, in an illegally baited area</u>. As that would be an unlawful sporting possession **by any citizen**, the sporting purpose reduction would be unavailable to the convicted felon.

<u>Id.</u> at 552-53 (emphasis added).

-10-

In Shell, the Fifth Circuit makes explicit what was implicit in the case law by emphasizing the lawfulness of the activity from the perspective of a citizen who is "not under **any** legal disability." Id. at 552 (emphasis added). Indeed, the analysis of the lawfulness of the hunting under the reduction "**turns**" on this analysis. Id. (emphasis added). Thus, we do not consider whether the individual is a felon, on probation, released on bail, or under a court order forbidding him to hunt, because these individual-specific factors are irrelevant for purposes of determining, as a general matter, what constitutes a "lawful sporting purpose." Of course, under this view of § 2K2.1(b)(1), Waggoner is entitled to the reduction because, if a citizen, not under the legal disabilities of Waggoner's probation conditions, engaged in the hunting actually performed by Waggoner, that hunting would be lawful.

### B.

The majority's second argument is that Waggoner's hunting was unlawful because, by violating a condition of probation, Waggoner theoretically could be prosecuted for criminal contempt. Slip Op. at 5. This is not consistent with this court's precedent. In United States v. Mendoza-Alvarez, 79 F.3d 96 (8th Cir. 1996), the defendant pled guilty to illegal entry after deportation for a felony in violation of 8 U.S.C. § 1326(a) and being an illegal alien in possession of a firearm in violation of 18 U.S.C. § 922(g)(5). Id. at 97. Mendoza-Alvarez asserted he should receive a § 2K2.1(b)(2) reduction because he possessed the firearm solely for hunting, but the district court denied the reduction because Mendoza-Alvarez violated Iowa law by operating his vehicle with a loaded rifle. Id. This court reversed and remanded, holding that "transporting a firearm in violation of auto safety laws does not constitute, per se, an `otherwise unlawful use' of a firearm . . . ." Id. at 98.

Under the majority's reasoning in this case, however, Mendoza-Alvarez's hunting would not constitute a "lawful sporting purpose." Presumably, the district court order deporting Mendoza-Alvarez directed him not to return to this country. Thus, Mendoza-Alvarez could be held in criminal contempt for reentering and, therefore, his hunting could not be "lawful." In addition, Mendoza-Alvarez committed another crime, beyond unlawful possession of a firearm, by illegally reentering the country. Finally, Mendoza-Alvarez could not "lawfully" hunt in Iowa because he could not lawfully hunt anywhere in the country.

A unanimous <u>Mendoza-Alvarez</u> court, however, engaged in no discussion whatsoever of the "lawfulness" of Mendoza-Alvarez's hunting in relation to the fact that he could not, by definition, hunt lawfully in this country. Nor did the court consider whether Mendoza-Alvarez could be in contempt for violating a court order by reentering. The court did not explore these issues because they are irrelevant for a determination of the lawfulness of the hunting.

It is instructive, however, to observe the facts which this court did find indicative of "lawful" hunting. For example, this court noted that Mendoza-Alvarez presented evidence that he possessed the firearm solely for hunting, hunted the morning of his arrest, and possessed an Iowa hunting license. <u>Id.</u> at 98. Indeed, this court noted that, from this evidence, "a reasonable trier of fact could conclude that he `possessed all . . . firearms solely for lawful sporting purposes,' **i.e., hunting pursuant to a state hunting license.**" <u>Id.</u> (emphasis added).

Furthermore, under the majority's reasoning, virtually no individual on probation can receive a § 2K2.1(b)(1) reduction because probation orders include boilerplate conditions that the probationer obey all federal and local laws. A probationer who carries a gun, for example, violates federal law. Thus, every

probationer who hunts violates a condition of probation and could theoretically be held in contempt.  Of course, no court holds that the reduction is inapplicable for probationers because such a result violates the purpose of the reduction.  In short, the potential of a contempt conviction fails to illuminate whether the hunting itself was lawful.

## II.

When the above analysis is framed by an examination of the Sentencing Commission's commentary for § 2K2.1(b)(1), the lawfulness of Waggoner's hunting is apparent.  The commentary notes state:

> Under § 2K2.1(b)(1), intended lawful use, as determined by the surrounding circumstances, provides a decrease in the offense level.  Relevant circumstances include, among others, the number and type of firearms (sawed-off shotguns, for example, have few legitimate uses) and ammunition, the location and circumstances of possession, the nature of the defendant's criminal history (e.g., whether involving firearms), and the extent to which possession was restricted by local law.

U.S.S.G. § 2K2.1, comment. (n.2) (1989).

These factors favor Waggoner.  There is no dispute that (1) Waggoner used a hunting shotgun, not a sawed-off shotgun or otherwise illegal gun, and his ammunition consisted of field loads for pheasants; (2) Waggoner hunted safely and in an appropriate location; (3) Waggoner had no prior conviction involving the illegal use of guns; and (4) local law permitted Waggoner to hunt during hunting season and with a license.

I find no case which considers, as a relevant factor under the commentary notes to § 2K2.1(b)(1), the probationary status of the felon in possession or the possibility of a contempt order.  In my

-13-

view, we should adopt the reasoning of the Fifth Circuit in <u>Shell</u> because it offers a standard consistent with the purpose of the § 2K2.1(b)(1) reduction and is faithful to the commentary notes which focus upon the lawfulness of the hunting itself, not whether the defendant was under any sort of legal disability.

Finally, the above analysis of "lawful sporting purpose" is consistent with the Sentencing Guidelines treatment of probation violations. The Guidelines define a violation of a condition of probation as a "breach of trust," U.S.S.G. Ch. 7, Pt. A, intro. comment. 3(b) (Nov. 1995), and reached this conclusion only after a careful consideration of two competing theories regarding sanctioning violations of probation. <u>Id.</u> This provision of the Guidelines indicates the Sentencing Commission's recognition of a distinction between breach of trust and unlawful behavior.[2]

---

[2]Indeed, courts repeatedly describe violations of probation conditions or supervised release as a "breach of trust." <u>See, e.g.</u>, <u>United States v. Glasener</u>, 981 F.2d 973, 975 (8th Cir. 1992) ("breach of trust" for violation of terms of supervised release); <u>United States v. Agard</u>, 77 F.3d 22, 26 (2d Cir. 1996) ("breach of trust" for violation of condition of probation); <u>United States v. Gaskins</u>, 849 F. Supp. 1102, 1105 (E.D. Va. 1994) (stating that defendant lying to probation officer constituted a "serious breach of trust"). In fact, the district court considered Waggoner's transgression consistent with this view because the court stated in its revocation of probation that Waggoner "has proven by his conduct to be unworthy of the trust a probationary sentence is based upon." (Appellee's Add. at 29.) Viewing a probation violation as a "breach of trust" is logical because "[i]n order to justify a revocation order `all that is required is enough evidence, within a sound judicial discretion, to satisfy the district judge that the conduct of the probationer has not met the conditions of probation.'" <u>United States v. Goeller</u>, 807 F.2d 749, 751 (8th Cir. 1986) (quoting <u>United States v. Burkhalter</u>, 588 F.2d 604, 606 (8th Cir. 1978) (quoting <u>United States v. Garza</u>, 484 F.2d 88, 89 (5th Cir. 1973))).

**CONCLUSION**

Waggoner's actions fit squarely within the behavior envisioned by the Sentencing Commission when it formulated the reduction for "lawful sporting purposes."  Accordingly, I would reverse the judgment of the district court and remand for resentencing.

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.