# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 11-3512

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | |
| v. | * | Appeal from the United States |
| | * | District Court for the District of |
| Amina Farah Ali, also known as Amina | * | Minnesota. |
| Wadaado, also known as Amina Aden, | * | |
| also known as Amina Adan, | * | |
| | * | |
| Appellant. | * | |

_____

Submitted: March 13, 2012
Filed: June 4, 2012

_____

Before MURPHY and GRUENDER, Circuit Judges, and ROSS,[1] District Judge.

_____

GRUENDER, Circuit Judge.

A jury found Amina Farah Ali guilty of twelve counts of providing material support to a designated foreign terrorist organization, al-Shabaab, and one count of conspiring to do so, all in violation of 18 U.S.C. § 2339B(a)(1). During the trial, the district court cited Ali for criminal contempt for repeatedly failing to stand when the

_____

[1]The Honorable John A. Ross, United States District Judge for the Eastern District of Missouri, sitting by designation.

court convened and recessed as required by a pretrial order. After her first failure to stand, Ali objected to the order as violating her right to the free exercise of religion. The court overruled the objection, ultimately cited Ali twenty times for criminal contempt, and imposed twenty consecutive five-day sentences of imprisonment. Ali appeals the contempt citations and sentences, contending that they violate the Religious Freedom Restoration Act ("RFRA"), 42 U.S.C. § 2000bb, *et seq*. We affirm the first contempt citation, but vacate the subsequent citations and remand for further proceedings.

## I.    BACKGROUND

On Thursday, September 29, 2011, Ali remained seated at the beginning of the final status conference before commencement of her criminal trial. The district court later became aware that Ali had remained seated, and it issued a written order the next day requiring all parties to "follow the Rules of Decorum set forth by the Court, which includes rising when Court is called to Order." Ali did not challenge the order over the weekend, although her attorney filed memoranda concerning other issues during that time. Nevertheless, when the court convened for trial on Monday, October 3, 2011, Ali remained seated. After confirming that Ali had been aware of the order requiring her to rise, the court revoked Ali's pretrial release status. Ali's attorney objected, arguing that Ali was not obstructing the proceedings and that Ali had "a religious reason" that "she should not rise for persons when she does not rise for the prophet." The court ordered a recess so that Ali could be taken into custody.

After the recess, the court told Ali that she did "not have a First Amendment right to not rise," and explained that "[i]t is disruptive and it will cause great harm to the administration of justice if you do not follow the very basic rules." When asked whether she would comply, Ali responded that she "never intended not to follow the rules of the court," but that her Muslim religion prohibited her from rising. The court responded, "You may have an interpretation of your religion that says that you cannot

-2-

rise, but I can tell you that the law of the United States is clear that the freedom of religion does not keep you from rising and following the decorum of court." The court noted Ali's failure to challenge the order over the weekend, and also noted that Ali's Muslim co-defendant and all the individuals in the gallery stood when court convened. The court subsequently noted that Ali stood when she was introduced to the jury. Ali explained that standing "for them to see me" was different from standing to honor them.

After the court reiterated the rising requirement, Ali responded, "I am willing to do anything else, but this is not to disrespect anyone. This is not to [not] follow the court rules. It's just a matter of faith for me to not stand for anyone. I am willing to do anything and everything other than . . . to compromise my faith . . . . As far as the other people who have the same faith as me, if they stand up for the jury or for anyone else, that's their rights. When I am before God, God will charge me individually and they will be charged individually." The court responded that "it's the law of the country that you do not have First Amendment rights dealing with the decorum of the court." The court finished by confirming that Ali understood that it would continue to hold her in contempt of court each time she refused to stand. The district court cited Ali for ten instances of failing to rise on October 3, 2011, and another ten instances on October 4, 2011. The court sentenced her to five days in jail for each instance, for a total sentence of 100 days.

Ali spent two days incarcerated after the court revoked her pretrial release. During this time, the court allowed "three learned clerics" to visit Ali. They informed her that she could stand for the court if she was "in a difficult situation, if [she was] fearful of [her] own life." After two nights of incarceration, Ali informed the court that she would comply with the order. The district court released Ali from custody, and Ali thereafter stood when court convened and recessed.

## II.    DISCUSSION

We review a district court's entry of a criminal contempt citation for abuse of discretion, "giving plenary review to conclusions of law and reviewing factual findings for clear error." *Wright v. Nichols*, 80 F.3d 1248, 1250 (8th Cir. 1996). "[W]e will reverse for abuse of discretion if we do not find that [the cited] behavior constituted contempt beyond a reasonable doubt." *Id.* The district court's power to punish conduct demonstrating contempt of its authority is limited by statute to conduct involving "(1) Misbehavior of any person in its presence or so near thereto as to obstruct the administration of justice; (2) Misbehavior of any of its officers in their official transactions; [or] (3) Disobedience or resistance to its lawful writ, process, order, rule, decree, or command." 18 U.S.C. § 401. Ali contends that her contempt citations should be vacated because the district court's order violated RFRA, and thus was not lawful, a question of law subject to *de novo* review.

### A.    Noncompliance with a Court Order Without a Prior Objection

As a threshold matter, Ali may not challenge her contempt citation based on her first failure to rise on October 3, 2011. It is well established that until a court's "decision is reversed for error by orderly review . . . its orders based on its decision are to be respected, and disobedience of them is contempt of its lawful authority." *Walker v. City of Birmingham*, 388 U.S. 307, 314 (1967) (quoting *Howat v. Kansas*, 258 U.S. 181, 189-90 (1922)); *see also United States ex rel. Shell Oil Co. v. Barco Corp.*, 430 F.2d 998, 1002 n.8 (8th Cir. 1970) (noting that criminal contempt "remains a proper sanction regardless of the correctness of the court's initial decision to issue the injunction" where "appellants made no effort to have the court modify its injunction or reopen the judgment" before "violat[ing] the court's clear mandate"). Ali admits that she was aware of the order when she failed to rise and concedes that she did not challenge the order until after her initial failure to rise. Because Ali knew about the court order in advance, failed to make a formal challenge although she had

-4-

the opportunity to do so, and knowingly violated the order by failing to rise, we affirm the first citation.

## B.    Applying RFRA to Criminal Contempt of a Court Order

After her first failure to rise in violation of the pretrial order, Ali challenged the validity of the order by explaining to the court that she could not comply with the order without violating her religious beliefs.  At this point, Ali effectively requested an alteration in the order and was forced to choose between violating the order and forfeiting her potential right to remain seated based on her religious beliefs.  *See Walker*, 388 U.S. at 318 ("This case would arise in quite a different constitutional posture if the petitioners, before disobeying the injunction, had challenged it in the Alabama courts, and had been met with delay or frustration of their constitutional claims.").  Having raised the defense of free exercise of religion to the district court's order, Ali was entitled to risk contempt convictions in order to avail herself of the right to expedited appellate review of the order. *See United States v. Di Mauro*, 441 F.2d 428, 436 (8th Cir. 1971) (reviewing the lawfulness of the disobeyed court orders underlying the defendants' contempt citations because "[t]he orders were not intended to preserve the status quo, they required affirmative acts, . . . the defendants made repeated and strenuous attempts to have them vacated[, and] there is no other way to obtain a review of the validity of the orders themselves").  Thus, to determine whether or not Ali's subsequent violations of the pretrial order constituted criminal contempt, we must evaluate whether RFRA applies to the pretrial order and whether the district court correctly assessed Ali's RFRA free exercise rights.

The district court denied Ali's objection to its order on the basis that Ali had no right under the First Amendment to disobey the court's rules of decorum.  *See Emp't Div., Dep't of Human Res. of Or. v. Smith*, 494 U.S. 872, 879 (1990) (holding that the Free Exercise Clause does not exempt individuals from compliance with neutral laws of general applicability).  However, RFRA, enacted in 1993, amended all federal laws,

including criminal laws, to include a statutory exemption from any requirement that substantially burdens a person's exercise of religion unless that requirement is the least restrictive means to achieve a compelling government interest. *See Harrell v. Donahue*, 638 F.3d 975, 983 (8th Cir. 2011) (explaining that RFRA "applies to all Federal law, and the implementation of that law, whether statutory or otherwise, and whether adopted before or after" its passage (quoting 42 U.S.C. § 2000bb-3(a))).

Ali's contempt citations are criminal convictions. *See United States v. Waggoner*, 103 F.3d 724, 727 (8th Cir. 1997) ("As the Supreme Court has stated, 'Criminal contempt is a crime in the ordinary sense; it is a violation of the law, a public wrong which is punishable by fine or imprisonment or both.'" (quoting *Bloom v. Illinois*, 391 U.S. 194, 201 (1968))). "A person whose religious practices are burdened in violation of RFRA 'may assert that violation as a claim or defense in a judicial proceeding and obtain appropriate relief.'" *Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal*, 546 U.S. 418, 424 (2006) (quoting 42 U.S.C. § 2000bb-1(c)). Furthermore, Congress may validly require the federal judiciary to consider RFRA as a defense to criminal contempt charges. *See Russel v. United States*, 86 F.2d 389, 393 (8th Cir. 1936) (holding that the court's inherent power to punish for contempt "may be modified, or even abrogated" by a constitutional statute and that the precursor to 18 U.S.C. § 401 was constitutional). Thus, because Ali objected to the burden the order placed on her exercise of religion, the district court erred by failing to consider whether RFRA required accommodation.

"As an initial matter, a person claiming that a governmental policy or action violates his right to exercise his religion freely must establish that the action substantially burdens his sincerely held religious belief." *Weir v. Nix*, 114 F.3d 817, 820 (8th Cir. 1997). In the First Amendment context, "[s]ubstantially burdening one's free exercise of religion means that the regulation 'must significantly inhibit or constrain conduct or expression that manifests some central tenet of a person's individual religious beliefs; must meaningfully curtail a person's ability to express

adherence to his or her faith; or must deny a person reasonable opportunity to engage in those activities that are fundamental to a person's religion.'" *Patel v. U.S. Bureau of Prisons*, 515 F.3d 807, 813 (8th Cir. 2008) (quoting *Murphy v. Mo. Dep't of Corr.*, 372 F.3d 979, 988 (8th Cir. 2004)). In contrast, RFRA extends free exercise rights even to religious practices that are not compelled by or central to a particular belief system. *See Van Wyhe v. Reisch*, 581 F.3d 639, 656 (8th Cir. 2009) (construing the definition of "religious exercise" established in 42 U.S.C. § 2000cc-5); 42 U.S.C. § 2000bb-2(4) (defining "exercise of religion" under RFRA as meaning "religious exercise, as defined in [42 U.S.C. §] 2000cc-5"). Thus, in a RFRA analysis, a rule imposes a substantial burden on the free exercise of religion if it prohibits a practice that is both "sincerely held" by and "rooted in [the] religious belief[s]" of the party asserting the claim or defense. *See United States v. Zimmerman*, 514 F.3d 851, 853 (9th Cir. 2007); *see also Love v. Reed*, 216 F.3d 682, 689 (8th Cir. 2000) (holding that a rule imposes a substantial burden on the free exercise of religion when it provides "no consistent and dependable way" to observe a religious practice).

After concluding that the pretrial order was neutral and generally applicable, the district court evaluated whether the order substantially burdened Ali's religious practices, although this would not be required in a standard First Amendment analysis. *See Smith*, 494 U.S. at 879. The court noted that Ali's interpretation of Islamic doctrine was inconsistent with the interpretations of her co-defendant, the Muslim spectators in the courtroom, and the Muslim clerics who came to speak with her. While these may be appropriate considerations in a First Amendment analysis of whether a practice is fundamental to a particular religion, *see Patel*, 515 F.3d at 813, such considerations are irrelevant in the RFRA context so long as Ali's objection to the pretrial order was rooted in her own sincerely held religious beliefs. *See Love*, 216 F.3d at 688 ("His beliefs may not fit squarely with the orthodoxy of Judaism, in any of its forms, but 'the guarantee of free exercise is not limited to beliefs which are shared by all of the members of a religious sect.'" (quoting *Thomas v. Review Bd. of the Ind. Emp't Sec. Div.*, 450 U.S. 707, 715-16 (1981))); *see also Olsen v. Mukasey*,

541 F.3d 827, 831 (8th Cir. 2008) (noting that, under RFRA, "the compelling interest of a challenged law must be evaluated with respect to the particular claimant whose religious exercise is substantially burdened").

Furthermore, focusing on Ali's "inconsistent" application of her belief in refusing to rise to honor the court but standing so that prospective jurors could see her is not appropriate in the RFRA context. *See Love*, 216 F.3d at 688 ("Love himself admits that his understanding of the tenets of his belief system are evolving. However, '[c]ourts should not undertake to dissect religious beliefs because the believer admits that he is struggling with his position or because his beliefs are not articulated with clarity and precision that a more sophisticated person might employ.'" (quoting *Thomas v. Review Bd. of the Ind. Emp't Sec. Div.*, 450 U.S. 707, 715 (1981))). Ali also stood at other times when doing so facilitated non-ceremonial functions, such as moving to the podium to address the court when it inquired as to why she would not stand. Thus, in the RFRA context, the court erred by evaluating the orthodoxy and sophistication of Ali's belief, instead of simply evaluating whether her practice was rooted in her sincerely held religious beliefs.

Here, the parties do not dispute that Ali's refusal to stand was rooted in her sincerely held religious beliefs. Furthermore, an order requiring someone either to act affirmatively in violation of a sincerely held religious belief or face criminal penalties substantially burdens the free exercise of religion. *Cf. Wisconsin v. Yoder*, 406 U.S. 205, 234-36 (1973) (recognizing a religious exemption from criminal penalties under compulsory school attendance laws for Amish parents under the *Sherbert* First Amendment doctrine). Thus, once Ali raised an objection rooted in her sincerely held religious belief, the government could enforce the order "only if it demonstrate[d] that application of the burden to [Ali] . . . is the least restrictive means of furthering [a] compelling governmental interest." 42 U.S.C. § 2000bb-1(b).

Because the district court applied only a First Amendment analysis, it never evaluated whether the pretrial order was the least restrictive means to achieve a compelling government interest, as required by RFRA. Ali concedes that maintaining order in the courtroom is a compelling government interest. Thus, we remand to the district court to evaluate whether the pretrial order was the least restrictive means to further that or other compelling interests. In making this evaluation, the district court must reach a balance between maintaining order and avoiding unnecessary and substantial burdens on sincere religious practices. *See Murphy*, 372 F.3d at 987. As we have said when applying RFRA to prisons, "[a]lthough we require[] the government to meet a higher burden than the rational relation test applicable in constitutional claim cases, we nevertheless accord[] a significant degree of deference to the expertise of prison officials in evaluating whether they [meet] that burden." *Id.* This deference is necessary because Congress intended the RFRA test to "be adjusted for the different contexts in which free exercise claims arise, the prison context being one with special needs." *Id.* A courtroom likewise is a special context in which special needs arise, requiring a significant amount of discretion to be vested in the district court. Because a party must challenge a court order under RFRA before violating it to avoid criminal contempt liability, courts will have the opportunity to exercise that discretion so that discipline and decorum in the court will not be compromised. On remand, the district court may exercise this discretion as it evaluates whether the pretrial order was the least restrictive means to further a compelling government interest.

## III.  CONCLUSION

For the foregoing reasons, we affirm the first contempt citation, vacate the remaining citations, and remand for further proceedings consistent with this opinion.

_____