# United States Court of Appeals
**FOR THE EIGHTH CIRCUIT**

_____

No. 96-1113

_____

| | | |
|---|---|---|
| Local Union 257, International Brotherhood of Electrical Workers, AFL-CIO, | * | |
| | * | |
| | * | |
| | * | |
| Plaintiff-Appellee, | * | |
| | * | |
| v. | * | |
| | * | |
| Sebastian Electric; Mike Barnes Electric; Rich-Ken Electric; Amick Electric, | * | |
| | * | |
| | * | |
| | * | |
| Defendants-Appellants. | * | Appeal from the United States |
| | * | District Court for the |
| National Electrical Contractors Association, St. Louis Chapter | * | Western District of Missouri |
| | * | |
| | * | |
| Counter Defendant - Appellee. | * | |
| | * | |
| -------------------------- | * | |
| | * | |
| Local Union 257, International Brotherhood of Electrical Workers, AFL-CIO, | * | |
| | * | |
| | * | |
| | * | |
| Plaintiff-Appellee, | * | |
| | * | |
| v. | * | |
| | * | |
| Mike Barnes Electric, | * | |
| | * | |

Defendant-Appellant.       *

                             *

National Electrical Contractors    *
Association, St. Louis Chapter,    *

                             *

Counter Defendant-Appellee.    *

-------------------------     *

Local Union 257, International    *
Brotherhood of Electrical      *
Workers, AFL-CIO,        *

      Plaintiff-Appellee,    *

      v.      *

Rich-Ken Electric,    *

      Defendant-Appellant.    *

National Electrical Contractors    *
Association, St. Louis Chapter,    *

Counter Defendant-Appellee.    *

------------------------------     *

Local Union 257, International    *
Brotherhood of Electrical      *
Workers, AFL-CIO,        *

      Plaintiff-Appellee,    *

      v.      *

Amick Barnes Electric,    *

Defendant-Appellant.

National Electrical Contractors
Association, St. Louis Chapter,

Counter Defendant-Appellee.

_____

Submitted: November 20, 1996

Filed: August 4, 1997

_____

Before McMILLIAN, Circuit Judge, HENLEY, Senior Circuit Judge, and BOGUE,[*]
District Judge.

_____

McMILLIAN, Circuit Judge.

This appeal arises out of four consolidated civil actions. Amick Electric, Mike Barnes Electric, Rich-Ken Electric, and Sebastian Electric (collectively referred to as "defendants" or "the defendant electrical companies") together appeal from a final order entered in the United States District Court[1] for the Western District of Missouri granting summary judgment in favor of the plaintiff below, Local Union No. 257 of the International Brotherhood of Electrical Workers (Local 257), and dismissing

_____

[*]The Honorable Andrew W. Bogue, United States District Judge
for the District of South Dakota, sitting by designation.

[1]The Honorable Scott O. Wright, United States District Judge for the Western District of Missouri.

defendants' counterclaim/cross-claim against Local 257 and the St. Louis Chapter of the National Electrical Contractors Association (St. Louis-NECA). Local Union 257, IBEW v. Amick Elec., Nos. 94-4331, 94-4332, 94-4333, 94-4339 (W.D. Mo. Dec. 11, 1995) (hereinafter "slip op."). For reversal, defendants argue that the district court erred in granting summary judgment against defendants on (1) Local 257's claim for enforcement of arbitration awards issued by the Council on Industrial Relations (CIR) and (2) defendants' counterclaim/cross-claim alleging that Local 257 and St. Louis-NECA had violated various federal antitrust laws. For the reasons hereinafter discussed, we affirm.

## Background

The following facts are generally undisputed. Local 257, a labor union for electrical workers, has members throughout central Missouri and engages in collective bargaining with employers who hire electrical workers. St. Louis-NECA is a multi-employer association which negotiates collective bargaining agreements on behalf of electrical contractors. Defendants are small owner-operated electrical companies with few or no employees. During the years 1989 through 1991, defendants each executed a "letter of assent" setting forth an agreement between the signatory electrical company and Local 257 in which the electrical company expressly authorized St. Louis-NECA to represent the company "for all matters contained in or pertaining to the current and any subsequent approved" collective bargaining agreement between St. Louis-NECA and Local 257 covering residential electrical work; during the same period of time, three of the four defendants executed a similar letter of assent authorizing St. Louis-NECA to be their collective bargaining representative with respect to any labor

-4-

agreement covering "inside" work.[2]  See Brief for Appellee Local 257, Addendum at 1-7 (letters of assent signed by defendants).  While the letters of assent were in effect, St. Louis-NECA entered into residential and inside collective bargaining agreements with Local 257 for the period of March 1, 1992, through February 28, 1994.  Article 1, as identically set forth in each of the two collective bargaining agreements, contained the following "interest arbitration" clause[3]:

> Unresolved issues in negotiations that remain on the 20th of the month preceding the next regular meeting of the Council on Industrial Relations, may be submitted jointly or unilaterally by the parties to this Agreement to the [CIR] for adjudication prior to the anniversary date of the Agreement.

Slip op. at 4 (quoting collective bargaining agreements).  The CIR is a joint industry and union arbitration panel.

The letters of assent signed by defendants contained the following provision concerning termination of the collective bargaining authorization granted to St. Louis-NECA: "It [the authorization] shall remain in effect until terminated by the undersigned employer giving written notice to [St. Louis-NECA] and to [Local 257] at least one

_____

[2]"Inside" work includes work on commercial and industrial properties and residential buildings larger than twenty-four units.

[3]"An interest arbitration clause is one in which the parties agree to arbitrate disputes over the terms of a new collective bargaining agreement in the event of a deadlock."  Sheet Metal Workers' Int'l Ass'n, Local 14 v. Aldrich Air Conditioning, Inc., 717 F.2d 456, 456 (8th Cir. 1983) (Aldrich Air Conditioning).

hundred fifty (150) days prior to the then current anniversary date of the applicable approved labor agreement."

By September 21 or 22, 1993, each of the defendant electrical companies had notified St. Louis-NECA of its intent to terminate its respective letter or letters of assent authorizing St. Louis-NECA to bargain on the company's behalf[4]; by September 22, 1993, each defendant had sent Local 257 notice to terminate its respective collective bargaining agreement or agreements. On November 23, 1993, Local 257 notified each defendant that it intended to negotiate successor collective bargaining agreements. Defendants refused to negotiate successor bargaining agreements with Local 257. On January 5, 1994, Local 257 notified each defendant that it planned to submit the issue concerning successor collective bargaining agreements to the CIR, pursuant to the interest arbitration clause in the 1992-1994 agreements. Thereafter, Local 257 submitted the matter to arbitration, and, on February 16, 1994, the CIR issued arbitration awards which, in essence, directed the parties to sign and immediately implement successor collective bargaining agreements for the period of March 1, 1994, to February 29, 1996.[5]

In the meantime, on January 14, 1994, Local 257 filed unfair labor practice charges with the National Labor Relations Board (NLRB) against each of the

---

[4]This was timely under the letters of assent because it was more than 150 days before the anniversary date of the applicable labor agreement.

[5]Consistent with this court's holding in Aldrich Air Conditioning, 717 F.2d at 458-59, the successor collective bargaining agreements which the parties were ordered to enter into did not contain interest arbitration clauses.

defendants. The regional director for the NLRB declined to issue complaints. Local 257 appealed the regional director's decision with respect to the charges against Amick Electric, and the general counsel for the NLRB affirmed the decision to deny relief. See Separate Appendix of Appellants at 359 (letter from general counsel of NLRB to Local 257).

On August 5, 1994, Local 257 filed four civil actions in federal district court. Local 257 sought, pursuant to § 301 of the Labor Management Relations Act (LMRA), 29 U.S.C. § 185, enforcement of the CIR arbitration awards issued against defendants. The district court consolidated the actions, and defendants together filed counterclaims and cross-claims (Counts I, II, and III) against Local 257 and St. Louis-NECA. In Count I, defendants sought a declaration that the CIR decisions are unenforceable. In Count II, defendants alleged that Local 257 had violated the LMRA. In Count III, defendants claimed that Local 257 and St. Louis-NECA had violated antitrust provisions of the Sherman Act, 15 U.S.C. § 1 et seq., § 302 of the LMRA, 29 U.S.C. § 186, and the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1962, by participating in the so-called "Target Fund" -- a fund, financed by Local 257, which provides partial payment of wages paid to members of Local 257 in circumstances where the employer has entered into a collective bargaining agreement with Local 257.

The parties filed cross-motions for summary judgment. In a final disposition of the case, the district court held that the CIR decisions are binding and enforceable against defendants, slip op. at 6-13, dismissed for lack of jurisdiction defendants'

counterclaim alleging that Local 257 had violated the LMRA,[6] id. at 17-19, and dismissed defendants' Count III counterclaim/cross-claim alleging that Local 257 and St. Louis-NECA had violated federal antitrust laws, id. at 14-17. This appeal followed.

**Discussion**

Enforcement of arbitration awards

We review a grant of summary judgment de novo. The question before the district court, and this court on appeal, is whether the record, when viewed in the light most favorable to the non-moving party, shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); see, e.g., Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986); Get Away Club, Inc. v. Coleman, 969 F.2d 664, 666 (8th Cir. 1992); St. Paul Fire & Marine Ins. Co. v. FDIC, 968 F.2d 695, 699 (8th Cir. 1992). Where the unresolved issues are primarily legal rather than factual, summary judgment is particularly appropriate. Crain v. Board of Police Comm'rs, 920 F.2d 1402, 1405-06 (8th Cir. 1990).

Defendants first argue that the district court erred in granting summary judgment in favor of Local 257 and ordering the enforcement of the CIR arbitration awards. Defendants contend that the letters of assent which they each signed are void, thus rendering the 1992-1994 collective bargaining agreements unenforceable against them.

---

[6]Defendants have not raised this issue on appeal.

-8-

In support of this argument, defendants assert that they were placed in an inferior bargaining position, that they were never informed of the interest arbitration clause, that they had no realistic opportunity to negotiate the terms of the collective bargaining agreements, and that Local 257 acted in bad faith. We reject these assertions as unsupported by the evidence in the record or the applicable law.

It is beyond genuine dispute that each of the letters of assent signed by the defendant electrical companies sets forth the company's authorization of St. Louis-NECA to be its collective bargaining representative and to enter into collective bargaining agreements on the company's behalf. Notwithstanding defendants' allegations that they did not fully appreciate the nature of their actions, they have failed to establish a genuine issue of fact concerning the voluntariness of their actions in signing the letters of assent. Nor have they identified any evidence tending to show that they were induced to sign the letters of assent because of fraud, coercion, or misrepresentation. The letters of assent were in effect at the time St. Louis-NECA entered into the 1992-1994 residential and inside collective bargaining agreements, and defendants therefore became parties to and bound by the terms of those agreements. The residential and inside collective bargaining agreements each contained an interest arbitration clause permitting the parties, jointly *or unilaterally*, to submit unresolved issues in negotiations to the CIR for adjudication prior to the anniversary date of the collective bargaining agreements. Local 257 timely submitted unresolved matters concerning successor agreements to the CIR, and, while the 1992-1994 collective bargaining agreements were still in effect, the CIR issued interest arbitration awards which directed the parties to sign and immediately implement successor collective bargaining agreements.

When a dispute is properly submitted to arbitration pursuant to an agreement to arbitrate in a collective bargaining agreement, the resulting arbitration award is ordinarily entitled to extreme judicial deference. See American Nat'l Can Co. v. United Steelworkers, No. 96-1451, slip op. at 6-8 (8th Cir. July 25, 1997) (discussing the "Steelworkers Trilogy"[7] and the well-established standard of extreme judicial deference to an arbitrator's award). Moreover, our court has specifically recognized that "once included in a collective bargaining agreement, . . . interest arbitration clauses generally are enforceable." Sheet Metal Workers' Int'l Ass'n, Local 14 v. Aldrich Air Conditioning, Inc., 717 F.2d 456, 458-59 (8th Cir. 1983) (holding that, while interest arbitration clauses generally are enforceable, the inclusion of an interest arbitration clause in the *successor* collective bargaining agreement will not be enforced because of the potential for collective bargaining agreements to become self-perpetuating). We therefore afford interest arbitration awards the extreme judicial deference approved by the Supreme Court in the Steelworkers Trilogy.

Defendants argue, however, that in the present case they were not bound by the 1992-1994 collective bargaining agreements -- and, consequently, not bound by the interest arbitration clauses -- because the following provision contained in the letters of assent was not satisfied:

---

[7]United Steelworkers v. American Mfg. Co., 363 U.S. 564 (1960); United Steelworkers v. Warrior & Gulf Navigation Co., 363 U.S. 574 (1960); United Steelworkers v. Enterprise Wheel & Car Corp., 363 U.S. 593 (1960).

The Employer agrees that if a majority of its employees authorizes the Local Union to represent them in collective bargaining, the Employer will recognize the Local Union as the exclusive collective bargaining agent for all its employees performing electrical construction work within the jurisdiction of the local union of all present and future job sites.

Defendants maintain that three of them never had any employees during the relevant time period and the fourth, Amick Electric, never had a majority of employees who authorized Local 257 to represent them. Thus, defendants conclude, St. Louis-NECA never acquired authority to enter into the 1992-1994 collective bargaining agreements on their behalf. We disagree.

The above-quote provision imposed an obligation upon each defendant to recognize Local 257 as the exclusive collective bargaining agent for the company's employees if a majority of the employees authorized Local 257 to represent them in collective bargaining. Conversely, in the absence of such majority employee authorization, defendants were not required to recognize Local 257 as having such representational status. The NLRB's refusal to issue complaints charging defendants with an unfair labor practice for refusing to bargain with Local 257 therefore appears to have been entirely appropriate. We emphasize, however, that the lack of majority employee authorization of Local 257 had no effect upon defendants' authorization of St. Louis-NECA to act on defendants' behalf in entering into the 1992-1994 residential and inside collective bargaining agreements with Local 257. Thus, defendants' reliance on the above-quoted majority-employee-authorization provision to challenge the enforceability of the interest arbitration awards is misplaced.

-11-

We also reject defendants' general argument that union representation is a prerequisite to a binding labor agreement with enforceable terms. As the district court explained, an employer and a union may enter into a "pre-hire" agreement pursuant to § 8(f) of the LMRA without a determination that a majority of employees desire representation by the union; such pre-hire agreements are binding, enforceable, and not subject to unilateral repudiation throughout their terms; and the union enjoys a presumption of majority status which expires only upon expiration of the pre-hire agreement. Slip op. at 9-10 (citing cases). Moreover, as this court has specifically held with respect to multi-employer agreements, "[t]he correct unit for measuring Union majority status is not the employees of one separate company, but the employees of all the employer signatories to the contract." NLRB v. W.L. Miller Co., 871 F.2d 745, 749 (8th Cir. 1989) (W.L. Miller Co.). We also agree with the district court's holding that enforcement of the CIR awards is not, as defendants contend, contrary to the rule of John J. Deklewa & Sons, Inc., 282 N.L.R.B. 1375 (1987) (Deklewa), aff'd sub nom. International Ass'n of Bridge, Structural & Ornamental Iron Workers, Local 3 v. NLRB, 843 F.2d 770 (3d Cir.), cert. denied, 488 U.S. 889 (1988), which has been upheld as the law in this circuit. W.L. Miller Co., 871 F.2d at 748. Defendants maintain that, in Deklewa, the NLRB implicitly held that an interest arbitration clause may not survive the termination of a § 8(f) pre-hire agreement. Brief for Appellants at 16. Thus, defendants suggest, the interest arbitration clauses at issue in the present case did not survive defendants' termination of the letters of assent and the collective bargaining agreements. In rejecting defendants' interpretation and application of Deklewa, the district court correctly reasoned as follows:

The issue of whether interest arbitration clauses survive the termination of a collective bargaining agreement was not addressed in Deklewa.  Several courts, however, have held that interest arbitration clauses survive the expiration of a section 8(f) pre-hire agreement.  "The fact that the employer may have had no statutory duty to bargain . . . did not eliminate [the employer's] contractual obligations."  As a result, this Court finds that the interest arbitration clause here survived the illegal termination of the collective bargaining agreement by defendants.

Slip op. at 12 (citations omitted).

We further reject defendants' assertion that the NLRB's disposition of Local 257's unfair labor practices charges precludes enforcement of the interest arbitration awards. Contrary to defendants' argument on appeal, the present circumstances are not similar to those of United Ass'n of Journeymen & Apprentices of Plumbing & Pipefitting Indus., Local 342 v. Valley Engineers, 975 F.2d 611, 613 (9th Cir. 1992) (Valley Engineers) (affirming district court's grant of summary judgment in favor of defendants-employers where NLRB had declined to file an unfair labor practices complaint against the defendants-employers).  In Valley Engineers, the Ninth Circuit explained:

Representational issues fall within the NLRB's primary jurisdiction.  Thus, "[w]e have recognized repeatedly that courts must refuse to exercise jurisdiction over claims involving representational issues."  This deference is rooted in both the superior expertise of the Board and the incompatibility of the "the orderly function of the process of judicial review" with initial district court consideration of representational issues.

-13-

. . . .

> [T]he court should look at whether "the major issues to be decided . . . can be characterized as primarily representational or primarily contractual." Where "[t]he interpretation of the contract depends entirely on the resolution of the question of whom the union represents," the matter is "properly left to the Board."
>
> This case falls on the "primarily representational," rather than the primarily contractual," side of the line.

Id. at 613-14 (citations omitted).

In the present case, the NLRB determined that defendants were not legally obligated to negotiate with Local 257, presumably because Local 257 could not establish itself as the elected representative of defendants' employees. By contrast, the primary issue before the district court was whether the interest arbitration clause, as identically contained in the residential and inside collective bargaining agreements, was binding and enforceable against defendants at the time it was invoked. The issues in the present case are primarily contractual and are distinct from the issues that were before the NLRB. Collateral estoppel does not apply. See slip op. at 11. For similar reasons, we also agree with the district court's disposition of defendants' statute of limitations defense which relies upon the incorrect assumption that Local 257's claim in the present case involves representational issues. See slip op. at 11. As the district court concluded, the six-month statute of limitations in § 10(b) of the LMRA, 29 U.S.C. § 160(b), is inapplicable because Local 257's claim against defendants in the present case does not allege defendants' improper refusal to bargain but, rather, seeks enforcement of the interest arbitration awards. See id. at 11-12.

-14-

In sum, we hold that the record, even when viewed in the light most favorable to defendants, shows that there is no genuine issue as to any material fact, that the interest arbitration clause was binding and enforceable against defendants at the time Local 257 invoked its rights under the interest arbitration clause, and that Local 257 is entitled to judgment as a matter of law on its claims for enforcement of the CIR arbitration awards.

Defendants' counterclaim/cross-claim alleging antitrust violations

Defendants also argue that the district court erred in dismissing their Count III counterclaim/cross-claim alleging that Local 257's and St. Louis-NECA's participation in the Target Fund violated the Sherman Act, the LMRA, and RICO. The Target Fund is a program, financed by members of Local 257, which provides partial reimbursement for wages paid to members of Local 257 where the employer is a party to a collective bargaining agreement with Local 257. As a consequence, employers who participate in the Target Fund are generally able to submit lower bids for jobs than they otherwise could without the fund's financial assistance. Defendants argue that Local 257's and St. Louis-NECA's operation of the Target Fund is a form of price-fixing designed to force out competition and is not protected by statutory or nonstatutory exemptions from the antitrust laws applicable to certain labor activities. Alternatively, defendants argue that there are at least genuine issues of material fact concerning the application of such labor exemptions and, thus, summary judgment was improperly granted.

In dismissing defendants' Count III counterclaim/cross-claim, the district court held that statutory and nonstatutory exemptions from the antitrust laws apply in the present case. See slip op. at 14-17, citing Connell Constr. Co. v. Plumbers Local Union 100, 421 U.S. 616, 621-22 (1975) (discussing statutory antitrust exemption for labor unions in the Clayton Act, 15 U.S.C. § 17 and 29 U.S.C. § 52, and the Norris-LaGuardia Act, 29 U.S.C. §§ 104, 105, 113), and Powell v. National Football League, 930 F.2d 1293, 1297 (8th Cir. 1989) (Powell) (citing Mackay v. National Football League, 543 F.2d 606, 614 (8th Cir. 1976) (Mackay), cert. dismissed, 434 U.S. 801 (1977)), cert. denied, 498 U.S. 1040 (1991). We now affirm on the basis of the district court's holding that Local 257's and St. Louis-NECA's conduct is protected under the nonstatutory exemption discussed in Powell and Mackay.

In Mackay, this court set forth the circumstances in which the nonstatutory exemption applies as follows:

> We find the proper accommodation to be: First, the labor policy favoring collective bargaining may potentially be given pre-eminence over the antitrust laws where the restraint on trade primarily affects only the parties to the collective bargaining relationship. Second, federal labor policy is implicated sufficiently to prevail only where the agreement sought to be exempted concerns a mandatory subject of collective bargaining. Finally, the policy favoring collective bargaining is furthered to the degree necessary to override the antitrust laws only where the agreement sought to be exempted is the product of bona fide arm's-length bargaining.

543 F.2d at 614 (citations and footnotes omitted). In the present case, Local 257 and St. Louis-NECA have demonstrated, and defendants have not genuinely controverted, that the Target Fund primarily affects only the parties to the collective bargaining relationship, that the wage reimbursement arrangement at issue concerns a mandatory subject of collective bargaining (i.e., wages), and that the arrangement is the product of bona fide arm's-length bargaining. See slip op. at 15-16. Thus, we hold that, when the record is viewed in the light most favorable to defendants, there is no genuine issue as to any material fact and Local 257 and St. Louis-NECA are entitled to judgment as a matter of law. Accordingly, we affirm the district court's summary judgment dismissal of defendants' Count III counterclaim/cross-claim. Accord Phoenix Elec. Co. v. National Elec. Contractors Ass'n, 81 F.3d 858 (9th Cir. 1996) (in action against local IBEW union and local NECA chapter alleging that job targeting program violated antitrust laws, holding that no genuine issue of fact existed and defendants were protected as a matter of law by nonstatutory exemption articulated in Mackay and adopted by the Ninth Circuit).

## Conclusion

For the reasons set forth above, we affirm the district court's order granting summary judgment in favor of Local 257 on its claims for enforcement of the CIR arbitration awards and affirm the district court's dismissal of defendants' Count III counterclaim/cross-claim. In addition, the motion by St. Louis-NECA to dismiss defendants' appeal and St. Louis-NECA's request for double costs and attorney's fees are denied.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.