# United States Court of Appeals

## FOR THE EIGHTH CIRCUIT

_____

Nos. 00-4006 and 01-2779

_____

| | | |
|---|---|---|
| International Brotherhood of Electrical Workers, Local Union No. 545, | * * * * | |
| Appellee, | * * | Appeals from the United States District Court for the Western |
| v. | * * | District of Missouri |
| Hope Electrical Corporation, | * * * | |
| Appellant. | * | |

_____

Submitted:  April 17, 2002

Filed:  June 7, 2002

_____

Before BOWMAN, RILEY, and MELLOY, Circuit Judges.

_____

MELLOY, Circuit Judge.

This matter concerns a labor contract dispute between the International Brotherhood of Electrical Workers, Local Union 545 (Local 545) and Hope Electrical

Corporation (Hope). Hope has filed two appeals from the district court's[1] denial of three separate motions for relief under Federal Rule of Civil Procedure 60(b) and from the district court's order holding Hope in contempt. The appealed orders all relate to an underlying, May 30, 2000, order to enforce two separate labor arbitration awards against Hope (May 30th Order). Hope refused to participate in one of the two underlying arbitration proceedings, failed to appeal the underlying May 30th Order, refused to comply with the May 30th Order, and refuted the validity of the district court's actions in pleadings before the National Labor Relations Board (Board). Because the district court did not abuse its discretion when it denied Hope's Rule 60(b) motions and entered the contempt order, the district court is affirmed.

I

In 1996, members of Local 545 applied for employment with Hope. After Hope denied positions to these members, Local 545 filed an unfair labor practices claim before the Board. This claim led to a settlement in the summer of 1997 in which Hope authorized the St. Joseph Division-Kansas City Chapter of the National Electric Contractor's Association (NECA)[2] to serve as Hope's representative regarding current and future inside labor agreements with Local 545. The settlement also required Hope to comply with the first inside agreement, which NECA had already negotiated and which was effective through May 31, 1999.

The first inside agreement required Hope to pay wages according to a negotiated scale, hire new workers exclusively through Local 545's hiring hall, and categorize workers and their respective duties according to an apprenticeship and

---

[1]The Honorable Scott O. Wright, United States District Judge for the Western District of Missouri.

[2]NECA is an association that represents electrical contractors and negotiates collective bargaining agreements on their behalf.

work distribution regime. The first inside agreement contained an interest arbitration clause. "An interest arbitration clause is one in which the parties agree to arbitrate disputes over the terms of a new collective bargaining agreement in the event of a deadlock." Sheet Metal Workers' Int'l Ass'n, Local 14 v. Aldrich Air Conditioning, 717 F.2d 456 (8th Cir. 1983). Hope became bound under the first inside agreement without its workers first having had an opportunity to elect or reject Local 545 as their bargaining unit representative. As such, the first inside agreement was a "pre-hire, construction industry agreement" sanctioned by section 8(f) of the Labor Management Relations Act (LMRA). 29 U.S.C. § 158(f). Section 8(f) agreements and the interest arbitration clauses contained therein generally are enforceable against employers notwithstanding the failure of the signatory union to obtain majority approval among eligible workers. Local Union 257, I.B.E.W., AFL-CIO v. Sebastian Elec., 121 F.3d 1180, 1185 (8th Cir. 1997).[3]

After Hope became bound by the first inside agreement, Hope's workers sought an election regarding Local 545 representation. Local 545 and Hope both instituted unfair labor actions before the Board, a practice that may invoke that body's blocking charge policy. Under the Board's blocking charge policy, Board-monitored elections may be suspended pending resolution of outstanding unfair labor claims. See Briggs Plumbingware, Inc. v. N.L.R.B., 877 F.2d 1282, 1289-90 (6th Cir. 1989); Bishop v.

---

[3]Until the expiration of such an agreement, the signatory union is entitled to a presumption of majority status. Sebastian Elec., 121 F.3d at 1185. Further, inside arbitration clauses may survive termination, and employers and eligible workers may be subject to the imposition of at least one undesired "successor" agreement through inside arbitration. Id. at 1182. As a protection for employers and employees against the perpetuation of such agreements and the unwanted imposition of multiple generations of successor agreements, this Court has determined that inside arbitration clauses are not enforceable "to perpetuate the inclusion of the [inside arbitration] clause in successive bargaining agreements." Aldrich Air Conditioning, 717 F.2d at 458 (citing N.L.R.B. v. Columbus Printing Pressmen & Assistants' Union No. 252, 543 F.2d 1169, 1170 (5th Cir. 1976)).

N.L.R.B., 502 F.2d 1024, 1029 (5th Cir. 1974).  Hope now argues that Local 545 has abused the blocking charge policy as a "union tactic" to delay decertification.  Local 545 argues that the blocking charge policy has worked as intended to prevent a decertification vote from occurring when Hope had "stacked the deck" against a successful union vote through refusal to hire exclusively from Local 545.

On February 8, 1999, a Joint Labor-Management Committee (Committee) comprising three representatives for Hope and three representatives for Local 545 met to consider various grievances that Local 545 had filed against Hope.  On April 15, 1999, the Committee ordered Hope to terminate a certain worker or conform his employment status to that of "journeyman wireman" (as that classification was defined in the first inside agreement), to permit Local 545 to audit Hope's payroll records to assess compliance with the wage scale, and to terminate two specific employees whom Hope had hired in violation of the exclusive Local 545 hiring hall provisions.

On February 11, 1999, after the Committee met, but before it ruled, Hope provided Local 545 with timely notice of an intent to terminate the first inside agreement upon its expiration.[4]  Local 545 subsequently and unilaterally instituted inside arbitration before the Council on Industrial Relations (CIR), as authorized by the first inside agreement.  Hope refused to participate in the inside arbitration.  On May 18, 1999, while the first inside agreement was still in effect, the CIR issued its ruling directing Local 545 and Hope to sign and implement a successor agreement, the second inside agreement.  A copy of this agreement, imposed upon Hope by the

---

[4]A party to a section 8(f) agreement cannot unilaterally terminate the agreement other than upon expiration of the term of the agreement.  Sebastian Elec., 121 F.3d at 1185.  The ability to terminate a section 8(f) agreement upon expiration of its term may be limited contractually.  Inside arbitration is one type of contractual limitation upon a party's ability to unilaterally terminate a section 8(f) agreement.

4

CIR, was attached to the CIR's arbitration ruling. In accordance with this Court's prior decision in Aldrich Air Conditioning, 717 F.2d at 458-59, the second inside agreement did not include an interest arbitration provision. Id. As such, Hope will not be forced to enter a third generation inside agreement and the current dispute involves only the first and second inside agreements.

Throughout the balance of 1999 and into the year 2000, Hope failed to comply with either arbitration ruling. Hope did not seek to vacate either ruling. Eventually, Local 545 brought suit under section 301 of the LMRA, 29 U.S.C. § 185, to enforce both arbitration rulings. In the May 30th Order, the district court ordered Hope to comply with both arbitration rulings in all respects. Hope failed to appeal the May 30th Order. Local 545 sought and obtained rulings from the district court on July 7 and 14, 2000, ordering enforcement of the May 30th Order. On August 29, 2000, Hope finally signed the second inside agreement, but subsequently failed to comply in all respects with the second inside agreement or with the May 30th Order.

Due to Hope's continued non-compliance, Local 545 filed a series of requests to have the district court hold Hope in contempt. In the third such motion, Local 545 attached a copy of charges filed by Hope before the Board on November 14, 2000. In these November 14, 2000 charges – filed nearly 6 months after entry of the May 30th Order and nearly 18 months after the arbitration rulings – Hope refuted the validity of the arbitrators' and district court's actions.[5] On November 22, 2000, in

_____

[5]Hope's charges before the Board characterized the following actions by Local 545 as unfair labor practices:

. . .
(c)    Filing lawsuits in Federal Court against Hope attempting to enforce an illegal arbitration award by the CIR; . . .
(i)    Having a Federal Judge order Hope to submit to an audit of its payroll records for a period not covered by Hope's Contract with the Union; . . .

5

response to Local 545's third request to hold Hope in contempt, the district court entered an order holding Hope in contempt and assessing a fine at $1000/day until such time that Hope complied with the requirements of the contempt order. The district court's contempt order was directed towards Hope and also towards Lloyd W. Hope as an individual. Lloyd W. Hope did not appeal the contempt order in his individual capacity.

Hope filed a second[6] motion for relief under Rule 60(b) on November 16, 2000, in which Hope argued that the May 30th Order was flawed due to the lack of majority approval for Local 545 representation and due to the ongoing blocking of monitored elections. In an order dated November 27, 2000, the district court denied Hope's second motion for relief. The appeals in Case No. 00-4006 are from the district court's November 22 and 27, 2000 orders.

On March 14 and May 17, 2001, respectively, Hope filed its third and fourth Rule 60(b) motions for relief from the May 30th Order. The third Rule 60(b) motion alleged that "new evidence" warranted relief from the May 30th Order. The alleged new evidence was the discovery by Hope that, on January 8, 2001, the International President of the International Brotherhood of Electrical Workers had only partially approved the second inside agreement that Hope had signed on August 29, 2000. By letter dated March 20, 2001, the International President rescinded his earlier objections and approved the second inside agreement in whole. Hope's fourth Rule 60(b) motion alleged errors at law underlying the May 30th Order based on the

---

(k)　　Filing a Court action to have a Federal Judge order Hope to sign an illegal 8(f) contract; . . .

(s)　　Attempting to have Hope held in contempt of Court for not signing the 8(f) contract as ordered by the CIR;

(t)　　Attempting to have Lloyd W. Hope held in contempt of Court for not signing the 8(f) contract as ordered by the CIR . . .

[6]Hope's first Rule 60(b) motion is not presently before this Court.

district court's failure to apply the Federal Arbitration Act (FAA), 9 U.S.C. § 1, *et seq.* (FAA), in the underlying enforcement action under section 301 of the LMRA. Hope asserted that the Supreme Court's decision in Circuit City Store, Inc. v. Adams, 532 U.S. 105 (2001), required retroactive application of the FAA to the present labor contract dispute. Hope did not allege that it had ever attempted to vacate the arbitration ruling or that either party had requested the district court to apply the FAA in the context of the proceedings under section 301 of the LMRA. Hope merely alleged in its motion for relief that the district court had borrowed a 90 day statute of limitations from Missouri law for vacating an arbitration award, and that the FAA would have provided up to one year for a vacation action. Hope did not assert any additional arguments to the district court to explain how application of the FAA might have altered the outcome of the proceedings.

On June 22, 2001, the district court denied Hope's third and fourth Rule 60(b) motions. The June 22nd order is the basis for the appeals in Case No. 01-2779. The district court found that approval of the second inside agreement in whole by the International President mooted Hope's third Rule 60(b) motion. The district court also found that the distinction urged by Hope regarding the FAA failed because the FAA would have required Hope to challenge the arbitration rulings within 90 days.

## II

This Court reviews the district court's denial of Hope's Rule 60(b) motions for abuse of discretion. Arnold v. Wood, 238 F.3d 992, 998 (8th Cir. 2001). Reversal of a district court's denial of a Rule 60(b) motion is rare because Rule 60(b) authorizes relief in only the most exceptional of cases. Jones v. United States, 255 F.3d 507, 511 (8th Cir. 2001) (citing General Elec. Co. v. Lehnen, 974 F.2d 66, 67 (8th Cir. 1992)). This Court does not review the underlying May 30th Order. Rather, this appeal from the denial of a Rule 60(b) motion presents only limited issues for review. Arnold, 238 F.3d at 998 ("Because Rule 60(b) cannot substitute for an

7

appeal, an appeal from the denial of a Rule 60(b) motion does not present the underlying judgment for [appellate] review." (citing Sanders v. Clemco Indus., 862 F.2d 161, 169-70 & n.16 (8th Cir. 1988))).

Similarly, review of the district court's order holding Hope in civil contempt[7] and assessing monetary sanctions is for abuse of discretion. Wright v. Nichols, 80 F.3d 1248, 1250 (8th Cir. 1996). As this Court has stated:

> 'The contempt power is a most potent weapon, and therefore it must be carefully and precisely employed.' Mahers v. Hedgepeth, 32 F.3d 1273, 1275 (8th Cir. 1994). Thus, although we review both the grant and denial of a contempt order for abuse of discretion, see Wright v. Nichols, 80 F.3d 1248, 1250 (8th Cir. 1996) (reviewing criminal contempt order); Wycoff v. Hedgepeth, 34 F.3d 614, 616 (8th Cir. 1994) (reviewing denial of contempt), we review an order of contempt more searchingly, see Mahers, 32 F.3d at 1275.

Independent Fed'n of Flight Attendants v. Cooper, 134 F.3d 917, 920 (8th Cir. 1998). Nevertheless, in this "searching" review for abuse of discretion, this Court need not hesitate to affirm a contempt order where a party has appropriated for its own wielding the power to determine the validity of court orders.

> One of the overarching goals of a court's contempt power is to ensure that litigants do not anoint themselves with the power to adjudge the validity of orders to which they are subject. The Supreme Court has observed that, without the contempt power, 'what the Constitution now

---

[7]Hope argues that, because the monetary sanction was to be paid to the court and not for the benefit of the Union, the district court actually held Hope in criminal contempt. Hope's argument fails to present the entire distinction which further classifies as civil a contempt order that is intended to coerce the party to comply with the court's orders. Hubbard v. Fleet Mortg. Co., 810 F.2d 778, 781-82 (8th Cir. 1987).

fittingly calls the judicial power of the United States would be a mere mockery.'

Chicago Truck Drivers v. Brotherhood Labor Leasing, 207 F.3d 500, 504 (8th Cir. 2000) (citing United States v. United Mine Workers, 330 U.S. 258, 290 n.56 (1947)).

## III

In Hope's second motion for relief under Rule 60(b), Hope does not assert any new evidence as required under Rule 60(b)(2).  Rather, Hope relies on Rule 60(b)(6) and the general "exceptional circumstances" requirement contained therein.  As an exceptional circumstance, Hope alleges that Local 545 abused district court and Board processes by simultaneously blocking the workers' vote concerning Local 545 representation and by pursuing contract remedies in arbitration and in court.  Hope alleges that the circumstances of this case are exceptional because, if an election were to take place, Hope believes that its workers would reject Local 545.

These arguments were available to Hope during the time for appeal of the May 30th Order.  The record is clear that Hope has been protesting Local 545's invocation of the Board's blocking charge policy and the lack of a workers' vote since at least 1997 – years prior to the May 30th Order.  Hope knew at the time for appeal that Local 545 had failed to demonstrate majority support for representation among Hope's workers.  Hope alleges nothing more than these previously known facts in support of its argument that "exceptional circumstances" exist to warrant relief under Rule 60(b).  Therefore, in Hope's second motion for relief, Hope attempts to use Rule 60(b) as an impermissible substitute for a timely appeal.  Sanders, 862 F.2d at 169 ("To prevent its use as a substitute for a timely appeal on the underlying merits, a Rule 60(b) motion must be made within thirty days of the judgment if the alleged error could have been corrected by appeal of that judgment.") (citations omitted).

9

Because Rule 60(b) cannot be used in this manner, the district court's denial of Hope's second Rule 60(b) motion was not an abuse of discretion.

IV

Hope's third Rule 60(b) motion, the March 14, 2001 motion, is the only one of Hope's Rule 60(b) motions that arguably rests on "new evidence." This is the motion in which Hope alleged as "new evidence" the discovery of Local 545's initial failure to secure wholesale approval for the second inside agreement from its International President. Local 545 countered this "new evidence" before the district court by submitting a later, wholesale approval of the entire second inside agreement by the International President. Hope failed to present to the district court any basis for rejecting the eventual approval of the entire second inside agreement. Further, Hope failed to file any response, as permitted by local rules, after Local 545 provided Hope with notice of the International President's approval. As a result, the district court dismissed Hope's motion as moot in light of the later, wholesale approval of the second inside agreement. This Court does not hear arguments raised for the first time on appeal. Terry B. v. Gilkey, 229 F.3d 680, 682 (8th Cir. 2000). Accordingly, this Court has no basis on which to conclude that the district court abused its discretion when it denied Hope's third Rule 60(b) motion.[8]

_____

[8]Hope has challenged the validity of the second inside agreement in proceedings before the Board and the district court. There is also pending another appeal by Hope challenging a district court order dealing with the validity of the second agreement. That appeal is not presently before the Court. This Court is not deciding whether Hope has any other grounds to challenge the second agreement. We are only deciding the district court did not abuse its discretion in denying a Rule 60(b) motion.

10

## V

The district court did not abuse its discretion by denying Hope's April 17, 2001 fourth Rule 60(b) motion for relief. Therein Hope argued that, because Circuit City Stores v. Adams, 532 U.S. 105 (2001) mandates the application of the FAA to all non-transportation worker employment contracts, Circuit City Stores also mandates retroactive application of the FAA in the present labor contract enforcement action under section 301 of the LMRA. This Court need not consider the applicability of Circuit City Stores to the present labor contract enforcement action because, even if this Court were to extend Circuit City Stores as requested by Hope, the district court correctly determined that the FAA would not have required a different result in this case.

In Circuit City Stores, the Supreme Court endorsed the view of a majority of the circuits by holding that the FAA applies to employment contracts. Id. at 119. In so holding, the Supreme Court determined that the FAA's exclusion of "contracts of employment of seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce" applied only to the employment contracts of transportation workers. Id. (interpreting 9 U.S.C. § 1). Relying on Circuit City Stores, Hope incorrectly asserts that the FAA would have afforded up to one year to vacate arbitration awards in the present case. In fact, the FAA would have required Hope to move to vacate the Committee and CIR awards within three months of their entry. 9 U.S.C. § 12 ("Notice of a motion to vacate, modify, or correct an award must be served upon the adverse party or his attorney within three months after the award is filed or delivered"). The limitation period relied upon by Hope, 9 U.S.C. § 9, provides a one year limitations period for actions to *confirm* arbitration awards. Other arguments advanced by Hope on appeal regarding benefits that might have flowed from the FAA were not advanced before the district court and need not be considered here. As noted above, this Court does not hear arguments raised for the

11

first time on appeal. Terry B., 229 F.3d at 682. Accordingly, the district court's denial of Hope's April 17, 2000 motion for relief was not an abuse of discretion.


VI


Hope consistently maintained before the district court that this case involves bargaining unit representational issues, that any breach of contract issues are secondary, and that all contract disputes must await disposition pending Board resolution of the representational dispute. Based on the strength of its convictions concerning the proper order for resolving the representational and contract disputes, and based on its opinion that Local 545 was perpetuating an unfair labor practice by blocking elections while seeking the imposition of a renewal inside agreement, Hope took the position that it did not need to comply with the arbitration rulings, the May 30th Order, or the district court's subsequent, July 14, 2000, order enforcing the May 30th Order. In short, Hope attempted to appropriate for itself the power to adjudge the validity of the arbitrators' and district court's orders. Hope further sought to drape its actions with the authority of the Board, notwithstanding the fact that the Board does not enjoy exclusive jurisdiction, and that the Board is powerless to stay enforcement of the district court's orders. See William E. Arnold Co. v. Carpenters Dist. Council, 417 U.S. 12, 16 (1974) (stating that "the Board's authority is not exclusive and does not destroy the jurisdiction of the courts in suits under 301") (citation omitted); see also, Local Union No. 884, United Rubber Workers v. Bridgestone/Firestone, Inc., 61 F.3d 1347, 1356 (8th Cir. 1995) ("[W]here a party's conduct gives rise to both a charge of an unfair labor practice and a claimed breach of collective bargaining agreement, the NLRB and the district court share 'concurrent jurisdiction.'") (citation omitted). Simply put, Hope was dissatisfied with the district court's conclusions and elected not to respect the authority of the district court. As a general matter, when a litigant refuses to respect the authority of the court, it is not

an abuse of discretion for the court to hold the litigant in contempt and impose a sanction to coerce compliance.

Hope now argues as a basis for relief that the requirements for compliance stated in the CIR's arbitration ruling and the subsequent May 30th Order were too vague to be capable of supporting a contempt order. Hope correctly notes that contempt orders must be based upon a party's failure to comply with a clear and specific underlying order, and that the contempt order must specifically identify those actions necessary to bring a contemnor into compliance. See International Longshoremen's Ass'n, Local 1291 v. Philadelphia Marine Trade Ass'n, 389 U.S. 64, 74-75 (1967). Hope provided this Court with a copy of the contempt order, a copy of the second inside agreement, an excerpt of the CIR ruling, and none of the text of the Committee ruling. It is clear from the record that the Committee ruling was detailed and specific, mandating action by Hope regarding specific employees. It is also clear from the record that the second inside agreement was not an ambiguous agreement, but rather contained clear requirements. It cannot reasonably be argued that the contempt order was in any way unclear. The underlying arbitration awards and the May 30th Order included clear statements of what the district court required – take specific actions regarding specific employees and execute and abide by the attached contract. Similarly, the contempt order mandated specific future action that would allow the district court and Local 545 to police compliance with the second inside agreement.[9]

---

[9]The contempt order required Hope to hire no new employees to perform bargaining unit work except pursuant to the exclusive hiring hall provisions, to pay wages according to the agreement's wage scales retroactive to the date of the May 30th Order, to submit fringe benefit reports and contributions pursuant to the agreement, to remit weekly reports identifying the employees performing work, the wage rate paid and the hours worked, and to file weekly affidavits stating that fringe benefit contributions had been submitted to the necessary funds.

Hope relies on <u>Philadelphia Marine Trade Ass'n</u>, 389 U.S. at 74-75, for the proposition that a district court order and subsequent contempt citation cannot be enforced if such orders do not state with sufficient specificity the acts required or prohibited. In that case, unlike the present case, the underlying order mandated enforcement of an arbitration award which contained no operative commands capable of enforcement. <u>See</u> <u>Id.</u> ("But that award contains only an abstract conclusion of law, not an operative command capable of 'enforcement'".). If the underlying arbitration awards in the present case had contained no operative commands, contained only abstract legal conclusions, or compelled no action, Hope's arguments would compel reversal. However, this Court can find no lack of clarity within the contempt order or the underlying orders sought to be enforced. Accordingly, after conducting a "searching" review of the record, we find that the district court did not abuse its discretion when it entered its contempt order against Hope.

The judgments of the district court are affirmed.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.

14